Gaston, Judge,
 

 after stating the pleadings as above, proceeded as follows: The material facts in this cause are those which are put in issue by the answer of the defendant, Daniel. For, as to the special defence set up by the defendant Buchanan, that he is a purchaser for a valuable consideration, and without notice,
 
 that
 
 may speedily be dismissed. He offers no proofs that he has paid any thing. In his answer, there is enough to fix him with notice. He admits that he had 'heard from Mr. Johnson, that there had been a
 
 *366
 
 talk of H. Pearson filing a bill for the land; and although the Pearsons lived within a mile or two of the land, he pro- , , -, . . , , ceeded to buy it without making an enquiry of them, or any of them, in relation to this supposed claim. But Mr. Johnson’s testimony states the information communicated to him in much stronger terms than it is expressed in his answer. — • He informed the defendant that the Pearsons did have a claim to the land — although he believed they were too careless to prosecute it. Having chosen to speculate upon the title, after receiving this information, the defendant must abide the result.
 

 The question raised upon the pleadings from whom moved the consideration for the 'land conveyed by Nathaniel Pearson to John M. Rogers, might have been one of difficulty, if the defendants had set up title under a purchase at execution sale'against. H. Pearson. The evidence is full that it passed through his hands, but not so full whether it was his money or the money of Mrs. Pearson, although the weight of the evidence is in favor of the latter position. Nathaniel Pearson- — with whom H. Pearson, as the agent of his wife, contracted for the purchase — and who was the surviving trustee in the marriage settlement — states his
 
 belief
 
 that the money paid by H. Pearson, to discharge the encumbrances tlien upon the land, was the separate money of his wife. It is true, that he gives no other reason for his belief than H. Pearson’s insolvency; but it is not easy to' suppose, from the relation in which he stood both to H. Pearson and his wife, but that he must have had the best means of knowing .whence the funds.came. But the pleadings raise no question between the creditors of H. Pearson and the plaintiff Martha; and as to all others but
 
 his
 
 creditors, the proof that the consideration moved from her is full. It was paid by him as her money, and the conveyance from Nathaniel Pearson, the surviving trustee, to John M. Rogers, the son of the deceased trustee, was made, as Nathaniel Pearson testifies, upon the explicit understanding that the money was hers, and that he was to hold the land as a part and portion of her trust estate, and for no other purpose; and no part of the consideration was paid by John M. Rogers. • Besides, it ap
 
 *367
 
 pears that the Pearsons took possession, and held possession of the land so conveyed, until after January, 1829; and no claim was ever set up to it by Rogers, in his life-time.
 

 There is no proof of a mistake on the part of the draftsman, of the conveyance from Nathaniel Pearson to John M. Rogers in omitting the declaration of trusts intended to be inserted therein. But Rogers accepted the conveyance of the. legal estate, without advancing any part of the cohside-ration money, with a knowledge that the same had been paid as the proceeds of the property secured to Mrs. Pearson, in the marriage settlement. — and, therefore, independently of his parol undertaking, became, in construction of law, a trustee for the purposes of that settlement.
 

 The next and most important controversy of fact, is, whether the defendant Daniel purchased at the execution sale, upon an agreement that he would convey the land to the purposes of the settlement, upon being paid the amount of his judgment against John M. Rogers. Some light is thrown upon this question, by certain records filed by the defendant as exhibits. From these, it appears, that at the July Term, 1827, of Anson County Court, two actions were instituted by the defendant Daniel, one against John M. Rogers, by an attachment which was levied on this tract of land, and the other against H. Pearson, by original writ, and that both of these were brought upon a joint and several note of the said Pearson and Rogers, executed 30th January, 1837, for the sum of $423:09 cents, payable to the said Daniel, on the 10th day of March then next following. Judgments were obtained in both at the January Term, 1828, a
 
 venditioni
 
 issued upon the judgment against Rogers, to sell the tract of land so attached, and a
 
 fi. fa.
 
 upon the judgment against Pearson. Upon they?,
 
 fa.
 
 which was endorsed, “ this judgment the same as D. D. Daniel
 
 v.
 
 John M. Rogers, and one satisfies both, except costs,” the sheriff returned “ no goods.” The
 
 venditioni,
 
 which was endorsed “ this is the same as No. 38, and one satisfies both, except costs,” was returned “land sold and bid off by D. D. Daniel for $425,15th April, 1838.” These exhibits, in connection with the defendants’statement in his answer, shew that the sale at which the defendant
 
 *368
 
 bought, was upon a judgment recovered against Rogers, for ¿tabt ^ue ^rom ^631'8011 as principal, and Rogers as surety. The testimony of William Chapman is, that he was Present at rite sale — that it was stated to the defendant Ball-iel, in his presence, by H. Pearson and H. McKenzie, that the laud was held by Rogers, in trust for Mrs. Pearson; that Daniel appeared to consider the land as the separate estate of Mrs. Pearson — professed to desire no more than his money from the trustee — did expressly agree with McKenzie and Pearson, in the presence of the witness, that he would bid off the land and convey it to Mrs. Pearson, or to a trustee for her and her children, upon receiving the amount of money due him; that upon this distinct understanding, he was allowed to become the purchaser; that in two hours after the sale, the witness having heard from McKenzie and Pearson, that they had become suspicious, from some things said by the defendant since the sale, that he might not act correctly, offered, as the friend of Rogers, the trustee, (who was absent,) to pay him at once the amount of his judgment; but the defendant refused to receive the money, making some evasive answer. If this testimony is credited, the allegation in the bill which we are now examining, is fully proved. Rut it is objected that this is the testimony of one witness only, a-gaiust the positive and unequivocal denial of the defendant. True, there is but one witness who expressly and directly testifies to the controverted fact — but his testimony is so upheld by corroborating circumstances, a,nd the part of
 
 the
 
 answer which opposes it is so obviously disingenuous, that we have no difficulty in 'determining to which we ought to give credit. The Pearson family were in actual possession of the land at the time of sale. Did this circumstance awaken no suspicion in defendant’s mind, that they might have some right to the land so held? H. Pearson was notoriously insolvent. Did this fact, connected with the former, lead to no enquiry on the part of the defendant,
 
 his creditor-,
 
 whether this land was liable for
 
 his
 
 debt? The answer leads us to infer that he
 
 did enquire
 
 of Hugh McKenzie; for it says that he was told by McKenzie, before the sale, that Rogers’s
 
 title
 
 was good. We are not informed
 
 xohy
 
 he made the enquiry,
 
 *369
 
 but can we doubt but that McKenzie, being privy to the purposes of tiie conveyance from Nathaniel Pearson to John M. Rogers, when informing defendant that the
 
 title
 
 to Rogers was good, informed him also
 
 for whom
 
 Rogers took that ti-tie? Besides, what mean the applications which defendant states to have been made to him directly after his purchase, first by Chapman — and then by H. Pearson, to pay him up the amount of his judgment? If there was no understanding before the sale, that its purpose was to
 
 secure
 
 the amount the judgment, what could induce either to suppose fora moment, that the defendant would take $400 for a piece of land absolutely his, and which he afterwards sold for $1,600? But while he peremptorily rejected all offers for the land from Mr. Chapman, Rogers’s friend, he did consent to sell for less than half price, that is to say, for $700, to Mrs. Pearson and her children; and the motive assigned for this act of benevolence is so singular that its
 
 modus operandi
 
 is unintelligible. We may imagine that sympathy for the suffering surety might induce a person of ordinary humanity, on a
 
 re-sale to him
 
 property bought very cheap at execution, to abate something of its actual value — but how compassion could be excited for the condition of the principal, because of a sacrifice of the
 
 surety's property,
 
 certainly is not easy to be conceived. If Mr. McKenzie were alive, it would have been desirable to have his testimony also — but he is dead' — and no other person now living is represented as having been privy to the transaction other than H. Pearson; and he could not be a witness, in whatever manner the bill had been framed. The rule of equity, as well as of law, forbids husband and wife to be witnesses for or against each other. “ The foundations of society would be shakened” by permitting it
 
 (Vowles
 
 v.
 
 Young,
 
 13 Ves. 140). It is, perhaps, proper to notice a document which has peen produced by the defendant, and which . •
 
 J 7
 
 is relied on as evidence either to shew an abandonment of Mrs. Pearson’s equitable right, or to confirm the defendant’s denial that she ever had such right in the land in question. This is a note signed by her husband, dated the 23rd of June, ■1828, promising payment to the defendant, Daniel, of the sum of ten dollars, on the 1st January, 1829,
 
 “
 
 for and in consid-
 
 *370
 
 of the use and rent
 
 of
 
 a tract of land for part of
 
 the
 
 year
 
 formerty e property of John M. Rogers-^— .how the property of the said D. D.
 
 Daniel.” On this is an indorsement by the
 
 defendant
 
 of some small demands of H. Pearson; and further, that “ he is willing- they shall balance the note,
 
 if
 
 the maker has no objection.” It is very certain that this document neither purports to be, and if it did, could not operate as a release of Mrs. Pearson’s equity. And with us it has no weight,- as tending to prove that she never had such equity. The deposition of Vincent Parsons, taken by the defendant, shews that from the date of the sheriff’s sale, in April 1828, up to February, 1829, Mrs. Pearson was, from time to time, striving to make the best terms she could with the defendant, to prevent herself and family from being turned out of possession. It is during this period of moral duress that the signature of her husband is obtained to to the paper exhibited, which
 
 obviously was framed and
 
 used, not for the purpose of securing rent, but to serve as an acknowledgment that the land when sold belonged to John M. Rogers, and that it became the property of Daniel under the sale. We view it as a shallow artifice to prop a title, which the defendant was conscious needed support. Upon the proofs, therefore, the Court holds that the defendant, Daniel, did buy the land in question, with notice that it was held by John M. Rogers, for the purposes of the trust in the marriage settlement, and upon an agreement to convey it to those trusts, when he should be fully satisfied the amount due him of the debt oi H. Pearson and John M. Rogers.
 

 
 *369
 
 A hnsb¡m(1 “«mot, in which a^bni Sed be jOvít.ness.f in respect 5 °etued1ío'<y herseparate use; for the rule of e-weiu^of JSf°¿bids and wife to es for* oTa-eaeh
 

 
 *370
 
 We much desire that the nature of
 
 that debt
 
 were more fully explained — and we think it probable that this might have been done on the part of the defendant, had he deemed it expedient. It seems a little extraordinary that a person represented as so absolutely insolvent as H. Pearson, could find surety for upwards of four hundred dollars — and also, that the friends of Mrs. Pearson, when this land was put up for sale, seemed all to acquiesce in' the propriety of holding
 
 this
 
 debt a proper encumbrance upon it. These circumstances have induced us to apprehend that the debt was in some way connected with the payment made for the land when
 
 *371
 
 conveyed to Rogers — and that
 
 he
 
 joined the husband of Mrs. Pearson in this note, upon the faith that the money to take it
 
 r , J
 
 up should be raised out of the proceeds of Mrs. Pearson’s separate property. However that may be — in regard to which we make no declaration — as the plaintiffs found their claim to the relief of the Court, mainly on the agreement of the defendant to re-convey upon payment of this debt — we permit -the land‘to be regarded as a security for it.
 

 There must be an account taken, as prayed for, of the profits and alleged waste of the land, since it has been possessed by the defendants respectively — and also of what is due to the defendant, Daniel, because of his said debt. When the result of these accounts is ascertained, the Court will then decree a conveyance of the land to the purposes of the trust, upon the payment of the balance which may be found due — . and such other relief as may then appear necessary.
 

 Puk Curiam. Decree accordingly.