Ruffin, C. J.
 

 If the bill were against William Hanner alone, even these defendants would not, at least they do not, question the proposition, that the land would be a security for the debt due on the bond given to his children by their grand-father. By the express terms of the sale, the purchase money was to be paid before Hanner was to have a deed. He did not even pretend in his bill, that Armfield meant
 
 to
 
 discharge him from that provision of the contract, when he gave one of the bonds to him and assigned the other to his children. If there had been such an understanding or intention on the part of Armfield, why did he not convey the land at the same time ? The only answer must be, that it was well understood, that the legal title was still withheld, as a security for the provision the grand-father was making in his last illness for his grand-sons. So Hanner’s own bill treated the transaction ; for it admits, that he was bound to pay the whole purchase money before he could
 
 call for
 
 a conveyance, and puts his right to call for it in that suit upon the position, that he had paid it- — not in fact, but upon a legal principle, by way of extinguishment by means of his being the guardian of the infant proprietors of the bond, and thus being the hand to pay and receive. Therefore, unless that principle were applicable to the case, it stood upon the com
 
 *121
 
 mon doctrine of the Court of Equity, that, until an actual conveyance, the estate is a security for the purchase money analogous to a mortgage.
 
 Oliver v
 
 Dix, 1 Dev. & Bat. Eq. 605.
 
 Green
 
 v Crockett, 2 Dev. & Bat. Eq. 390. Now, it was an entire mistake to suppose that the principle of law relied on had any thing to do with the case. The action at law on the bond was not even suspended; for, although the debtor was the guardian, yet the action on his bond would not be in his name, but in that of the infants themselves, the assignees of the bond, by a next friend. But even if it were suspended, it would only be during the guardianship; and that being the act of the guardian himself, and the law, and not of the infant creditor, the suspension would not work an extinguishment, but be only temporary and cease with the guardianship, as in the case of the debtor administering on the creditor’s estate.
 
 Needham's
 
 case, 8 Rep. 136. But certainly, however it might be at law, a Court of Equity would never enforce against any person, and much less against infants, any such principle of extinguishment, but would relieve against it, and keep on foot every security necessary to tiie satisfaction of the debt, against any act of the debtor himself.
 

 It may be true, that the wards might charge their father on his bond for the purchase money, and also might charge him and his surety on the guardian bond ; but that does not preclude them from insisting also on their real security. Indeed it is just and proper, they should have recourse to that in the first instance, as the property of the debtor himself, in exoneration of his surety.
 
 Bunting
 
 v
 
 Ricks, 2
 
 Dev. & Bat. Eq. 130. There was then no satisfaction of the debt in question, as is obvious on Hanner’s own bill : and, consequently, he had no right to a conveyance, and upon the bill of his children against him the land would be declared a security for the debt, and disposed of accordingly.
 

 The decree in that cause made no difference. The present plaintiffs were, none of them, parties in that suit, and, therefore, not bound by the decree
 
 propria vigore.
 
 If a conveyance had been actually made under it, the plaintiffs
 
 *122
 
 Would still have been entitled to relief against Hanner himself, because obtained in bad faith towards those creditors, and with the view to defeat them of a security to which they wcr0 entitled. But there has been nothing done under the decree, and, therefore, the legal title is still outstanding in the heirs of Armfield, and the plaintiff's may insist upon it as a security for their debt, actually subsisting. The decree of a Court of Equity is not a legal title. It professes only to require (he person to convey the title by executing a deed.
 
 Ferebee
 
 v Proctor, 2 Dev. & Bat. 439. And this brings up for consideration the defence set up by the trustee and creditors claiming under Hanner’s assignment, as peculiar to themselves, and founded on merits independent of those of Hanner and himself. They claim to be just creditors, who have honestly obtained a security for their debts without a knowledge of the plaintiff’s equity; and, therefore, entitled to hold it. But they were mistaken in supposing that they had obtained a conveyance of this land as a security. They say, they relied on the decree as determining the rights of the parties and constituting a title. But we have seen, that is not so. The deed is only an assignment of an equitable title, and then, were these persons purchasers instead of creditors, the estate itself must answer all claims to which it would have been subject in the hands of the assignor. It is only the purchaser of the legal title without notice of a prior equity, who can hold against such equity.
 
 Polk v
 
 Gallant, 2 Dev. & Bat. Eq. 395. In the case before us, there is not only not a conveyance of the legal title, but there is a plain reference on the face of the deed to the decree and covenant as constituting the only title of Hanner, and those documents would have enabled all these persons to have discovered the true state of the case, not to speak of the actual knowledge of the trustee and the active creditor in getting the deed. But it is useless to consider the particular circumstances, as the defendants are but the assignees of an equity, and get only what the assignor had ; which was the right to have this land, when he had paid to his three children the debt he owed them for the residue of the
 
 *123
 
 purchase money. The court tabes nothing from the defendants, which they or Planner ever had ; but only say, the defendants cannot take from the plaintiffs a security which they honestly had before the defendants got theirs, and which they have done nothing to impair. Therefore, the land must be declared to be a security for the sum due on the bond for $1,000, and it must be referred to enquire what that sum is; and, as both sides wish the land sold, when the debt shall be ascertained, a sale will be decreed, and, after paying the plaintiff’s debt and interest, and the costs, the balance will go to the trustee to be applied under his assignment.
 

 Per Curiam, . 'Decree accordingly.