The feme plaintiff alleges, in substance, that on 28 September, 1875, the defendant contracted with her son, Nathan L. Barnes (who in the course of the action became her coplaintiff), to sell to him the tract of land, described in the complaint, for the price of $6,211.37; that to secure the payment of this purchase-money he took from her said son eight several notes, each of seven of them for $800, and the eighth of them for $911.37, one of them going due on the first day of each January next after the day and date first above stated, and the last and largest one of them to be due on 1 January, 1883; that the defendant, on (48) the first above mentioned day, executed to her said son his bond for title for said land in the sum of $6,211.37, conditioned that he would make to the son a good and sufficient deed, with general warranty, etc., to convey to him the fee-simple estate therein when and as soon as the said notes should be paid as they came due; that it was made part of said contract that the feme plaintiff should sign and become surety to each of said notes, which she did, with the distinct understanding and agreement that when said purchase-money should be paid and her son should receive title for the land from the defendant, her said son would execute to her a deed sufficient to convey to her an estate for her *Page 35 
life or her widowhood (she then and ever thereafter and now being a widow); that the defendant well understood and had full knowledge of this agreement, and he wrote on the back of said bond for title a memorandum thereof, in these words: "I, Nathan L. Barnes, do hereby agree and promise my mother that she shall have a lifetime or widowhood estate upon the premises mentioned in the within bond. Witness my hand and seal, this 28 September, 1875." That this memorandum was signed under his seal by her said son, and the execution of the same was witnessed by the defendant; that she went upon and she and her son cultivated said land and paid the first six of said notes as they each matured; that afterwards, in 1881, the defendant called at her gate and said he had given her son, Nathan, a deed for the land, and the latter had fixed a paper to protect her life estate; that she had full confidence in the defendant and bade him keep the paper; that about this time the two remaining notes were delivered to her by her son, and she felt secure, as the bonds were all canceled; that about 1 January, 1889, her son told her she had no right to the land; that he could turn her out of possession; that she at once sent for the defendant and asked him if she had no estate in the land; that he at first told her she had none; that in a day or so he told her she did have a life interest in the land, (49) and produced from his pocket a bond for title for a life estate or for her widowhood, made to her, executed by her said son, dated 21 July, 1881; that she never knew or suspected until 25 December, 1888, that her son had taken a deed for the land and executed three mortgages thereon to the defendant, purporting to secure moneys loaned to her son, aggregating, including the said two last notes for the purchase-money, the sum of $7,640.67; that she is entitled to have the defendant and her said son convey to her a life estate in said land, she so having an estate in equity, etc.; that said mortgage deeds are a cloud on her equitable title; that she was never consulted concerning the making of any of said mortgages; that she knew nothing of their execution, and never assented to any one of them, and is not conscious of having received any benefit from them or any one of them, etc. She demands judgment that the defendant be restrained by injunction from selling her life estate in said land under any power in said mortgages or any one of them; that he execute to her a quitclaim deed for a life estate in said land; that he cancel such of said mortgages as have been discharged, and for general relief, etc.
The answer admits the alleged contract of sale of the land between the son of the feme plaintiff and the defendant, but it denies that she was a party to it, except that she was surety to the notes for the purchase-money; it alleges, as to the contract between herself and her son, that he had no connection with the same, except that he wrote and witnessed *Page 36 
the execution thereof on the back of the bond for title; he admits that, in consideration of the feme plaintiff's becoming surety to the said notes, her son agreed with her that she should have an estate for life or her widowhood in the land. The answer admits that the defendant conveyed title thereto to her son and took sundry mortgages on the land to secure the balance of the purchase-money and money she lent (50) him, and alleges that $1,000 of the sum lent was to buy an engine for cotton-gin purposes, a store account, supplies, etc. The defendant pleads and relies upon the statute of limitations, and insists that the court has not jurisdiction to remove the alleged cloud upon the feme
plaintiff's title, etc. He demands judgment for $2,500, with interest, and that the same be declared a first lien upon the said land, and particularly upon the interest of the feme plaintiff therein; and like judgment against the said son for $1,615.67, with interest, the same to be a lien upon his interest in the land; that the present mortgage be foreclosed, and for costs.
The jury found, upon pertinent issues submitted to it, that the sixth note for the purchase-money was paid before the loan to the son and the mortgages to secure the same; that the balance of the purchase-money for the land due the defendant was $1,665, with interest at 8 per cent from 3 March, 1889, and that the plaintiff's claim is not barred by the statute of limitations.
The court gave judgment that the feme plaintiff is entitled to a life estate, or an estate during her widowhood, in the land, subject to the payment of $1,665, with interest at 8 per cent annually from 3 March, 1890, and that this sum be a lien upon her life estate; that upon the payment of this sum to the defendant he shall execute to her a conveyance for the said land for her life or widowhood. The court also gave judgment against the male plaintiff in favor of the defendant for $4,115.67, with interest at 8 per cent from 3 March, 1889, this judgment embracing the amount of the judgment against the feme plaintiff, and to be a lien upon his interest in the land. Upon failure to pay the said judgment, a commissioner is directed to make sale of the land, etc.
The feme plaintiff excepted to the judgment, and assigned as grounds of her exception:
1. That said sum of $1,665 should not, under the complaint (51) and answer and issues as found, be a lien and chargeable on her estate for life or widowhood in the land described in the complaint, but that her said interest should be exempt from said lien and charge.
2. That if held to be a lien and charge at all on said life estate, the amount should be apportioned between the two parts of the fee simple, according to the quantity and value of each estate — the remainder and the life estate. *Page 37 
The first issue was as follows: "Was the sixth note given by N. L. Barnes and Nancy H. Barnes paid before the execution of the note and mortgage for $2,500?"
The court, in instructing the jury, said:
"Now, if this testimony satisfies you that Mr. N. L. Barnes paid defendant the amount of the sixth note and took up the note, and afterwards, either before he left the defendant or after he left him and returned, borrowed $2,500 and took up the other two notes, you will respond to this issue `Yes.'
"But if you find that Mr. Barnes borrowed $2,500 from the defendant and then took up the three notes with the money he had borrowed, you will answer `No.'"
The defendant asked the following instruction, which was refused: "If the jury believe that Nathan Barnes took currency to McCullers to pay the note in controversy, but stated that he needed the money, and that thereupon a new note was given for the amount of this note and two others, and a new mortgage executed, that the sixth note would be included in the amount of the new mortgage and would not be paid, but merged in the new note."
Defendant excepted to the charge as given, and to the failure to give the charge as requested.
The defendant asked the court, upon the point reserved as to (52) the cause of action, to rule that the plaintiff's complaint did not state a cause of action under Busbee v. Macy, 85 N.C. 329.
Motion overruled; defendant excepted.
The defendant then asked the court, upon the admitted facts and the verdict, to adjudge upon the point reserved as to the statute of limitations, and for judgment in favor of the defendant. The court held that the claim is not barred by the statute of limitations. Defendant excepted.
The feme plaintiff and the defendant appealed to this Court.
The contract of sale of the land in question between the son of the feme
plaintiff and the defendant, as embodied in the bond for title and the notes for the purchase-money, had the effect to put the equitable title to the land in the son. The defendant retained the legal title as security for the purchase-money, and in trust for the son, the vendee, to be conveyed to him when and as soon as the purchase-money should be paid. Winborn v.Gorrell, 38 N.C. 117; Deer v. Bellinger, 75 N.C. 300; Hinsdale v.Thornton, ib., 381; Bank v. Clapp, 76 N.C. 48. *Page 38 
Granting, as contended by the defendant, that the feme plaintiff had no connection with the contract of the sale of the land just mentioned to her son, except as surety to the notes for the purchase-money, still she purchased from the latter for a valuable and sufficient consideration an estate for her life or widowhood in the land, the legal title to be made to her by her son when and as soon as he should get the same from the defendant. That she had made such contract with her son, the defendant well knew; he had notice of her rights acquired by it at the (53) time it was made, and ever thereafter, and certainly at the time he conveyed to the son the legal title for the land, lent him money and took the mortgages to secure the same and the balance of the purchase-money. Indeed, he wrote on the back of the bond for title he executed to the son the memorandum of the contract, and witnessed the signing of the same by him. Hence the defendant lent the money to the son and took the mortgages to secure the same with notice of and subject to the right and equitable estate of the feme plaintiff purchased from her son, except as to the balance of the purchase-money due to him. As to this, the land remained chargeable with it, not as against the feme plaintiff as the defendant's debtor — she owed him no debt in that respect — but as against the son, who was the debtor. The debt, the whole of it, for the purchase-money, was that of the son. The right of the feme plaintiff to have the legal title, under the circumstances, was delayed until the son should pay the purchase-money and get the legal title from the defendant in pursuance of the contract between him and the son.
The feme plaintiff was not liable for the balance of the purchase-money as surety, because she was discharged from such liability when the defendant surrendered the notes therefor and extended the time and took mortgages of the land to secure the payment of the same. Such surrender of the notes and entire change of the character of the debt, and the new security for the same, had the effect to discharge her liability as surety. This, however, did not relieve the land from the burden of the balance of the purchase-money, because the defendant was not bound to part with the legal title, nor did he intend to do so until the same should be paid. When he took a mortgage of the land to secure this balance, he simply changed the shape of his security. Moreover, it would be inequitable for the feme plaintiff to get the legal title to the estate she so purchased before the balance of the purchase-money (54) should be paid. She purchased with the whole debt for the land was chargeable and burdened with the whole debt for the purchase-money, and that the defendant was not bound, in any case, to part with the legal title until the debt should be paid, nor did he part with it for the purpose of relieving it from his just claim upon it in that respect. *Page 39 
The defendant could not burden the land in question with a debt due to him from the son mentioned on any account other than that for the purchase-money thereof, by mortgage or otherwise, to the prejudice of thefeme plaintiff in the respects under consideration, nor can he reasonably complain that he could not, because he took the mortgages with knowledge and notice of her equitable estate and right to the land, without her knowledge and consent. Linch v. Gibson, 4 N.C. 676; Pearson v. Daniel,22 N.C. 360; Maxwell v. Wallace, 45 N.C. 251; Rutledge v. Smith, ib., 283;Shaver v. Shoemaker, 62 N.C. 327; Staton v. Davenport, 95 N.C. 11.
Nor was the feme plaintiff's equitable estate and interest in the land, as such, chargeable with the balance of the purchase-money due the defendant. She did not owe it, nor, as we have seen was she liable for it as surety, if that could at all alter the case in this respect. She did not purchase her equitable estate from the defendant, but from her son. She has no relation in the matter with the former, who might sell the land to pay the purchase-money, or any part of it, if need be, but he would not sell it as that of the feme plaintiff, nor could he so sell it as to charge her interest specially in order to relieve or disburden that of her son. She is not debtor to him. He has no demand against her for the purchase-money. He has simply the right to sell the land, or some part of it, if need be, to pay the balance of the purchase-money, without reference to her estate therein, and as if she had none. The court, therefore, erroneously adjudged that the balance of the purchase-money is a lien "upon the life or widowhood estate" of the feme (55) plaintiff. It should have adjudged that she was entitled to have the legal title to such estate in the land when and as soon as the balance of the purchase-money therefor specified should be paid, and that this sum is a lien upon the land, and that upon the payment of such balance the defendant and the said son shall execute to her proper deeds conveying to her such estate as she is entitled in such case to have. The exception of the feme plaintiff must therefore be sustained.
The exceptions of the defendant are not well founded. There was evidence to warrant the instruction to the jury complained of, and we think it sufficiently embraced that specially asked for by the defendant. The court suggested two aspects of the evidence, and the jury could readily apply it without directing their attention to a particular view of part of it.
There was no ground for the second exception. This is not an action, in any view of it, to remove a cloud upon the feme plaintiff's title. Its purpose is to compel the defendant who conveyed the legal title to the land in question to her coplaintiff, and then lent him large sums of money and took mortgages of the land from him to secure the same and *Page 40 
the balance of the purchase-money, with notice of her equitable estate and rights in and to the land, to convey to her, under the circumstances, the legal title to the same, and, further, under the circumstances, if need be, to sell the land to pay the balance of the purchase-money, and to the end she may obtain such relief as she may be entitled to have.
Nor is the feme plaintiff's right to sue barred by any statute of limitation. Her right to have the legal title to her equitable estate in the land does not arise until the purchase-money shall be paid, and it has not yet been paid. This action is equitable in its nature, and its chief purpose is to enforce an equitable right of the feme plaintiff to have (56) the relief specified against the defendant, as to which the statute of limitations does not apply, unless it be that (The Code, sec. 158) which bars an action for relief, if not otherwise provided for, if the same shall not be commenced within ten years next after the cause of action accrued. If it be granted that this statute applies in cases like the present one, clearly the action was brought within ten years after the right to sue accrued. Libbett v. Maultsby, 71 N.C. 345; Ross v.Henderson, 77 N.C. 170.
What we have said disposes of both appeals.
There is error in the plaintiff's appeal, and no error in that of the defendant.
The judgment appealed from must be modified as directed in this opinion, and, so modified,
Affirmed.
Cited: Hairston v. Bescherer, 141 N.C. 207; Chatham v. Realty Co.,180 N.C. 505.