W. A. WILLIAMS ET AL. V. P. A. LEWIS ET AL.

(Filed 13 March, 1912.)

1. **Principal and Surety—Parol Evidence—Equity—Bills and Notes —Subrogation—Exoneration.**

    As between the signers of a note, it may be shown by parol evidence that some of them were sureties, for the purposes of enforcing exoneration, subrogation, or any other equitable right which will not injuriously affect the payee who loaned his money without knowledge of the relation, though upon the face of the paper they appear to have all signed as principals.

2. **Vendor and. Vendee—Innocent Purchaser—Notice—Equity—Legal Title.**

    The protection afforded to an innocent purchaser for value without notice, etc., applies only when he has acquired the legal title, and not an equitable interest in lands.

3. **Same—Tenants in Common—Mortgages—Principal and Surety— Bills and Notes — Exoneration — Substitution — Innocent Purchasers.**

    When tenants in common become sureties on the note of one of them and secure it by mortgage duly registered on the lands held in common, and from the face of the papers it appears that they signed as joint principals, and the real principal on the note subsequently borrows money on a note secured by a mortgage on his interest in the lands, the holder of the second note and its indorsees have for their security only a mortgage on an equity of redemption, and cannot avail themselves of the plea of being innocent purchasers for value without notice, so as to prevent the sureties on the first note from asserting their equities by way of exoneration, or, if they had been compelled to. pay the debt, of substitution to the rights of the creditor; and these equitable rights of the sureties accrued to them when they signed the note secured by the mortgage.

4. **Same—Inquiry.**

    One who has acquired by indorsement a note of a tenant in common secured by a mortgage of his equity of redemption in the lands should inquire into the nature and extent of his security, and in this case should have ascertained that a prior registered mortgage given on the entire tract of land by all the tenants in common to secure a note which appeared upon the

face of the papers to have been given by them as joint principals was in fact made by one of them as principal and the others as sureties.

HOKE, J., concurs in the result.

APPEAL by H. H. Phillips, receiver, from *Ferguson, J.,* at October Term, 1911, of EDGECOMBE.

This case was tried below on the following case agreed:

1. On 27 December, 1905, Howard Carr, Maggie Carr (now Williams), Mollie Carr (now Lewis), executed to J. M. Norfleet, trustee, a deed of trust to secure a note of $500 to L. E. Norfleet, the said deed of trust conveying their three-fourths equal and undivided interest in certain lands therein described, which deed was registered on 28 December, 1905, J. F. Carr owning the other fourth.

2. Howard Carr was principal and Maggie Williams and Mollie Williams were sureties to the said debt, though the note and deed did not show it.

3. The note of $500 was for full value assigned to P. A. Lewis on 15 March, 1909; L. E. Norfleet had no knowledge as to who was principal in said note until after the maturity of the same and prior to its assignment to G. M. T. Fountain, which assignment was after maturity; that G. M. T. Fountain, the assignee of L. E. Norfleet, and P. A. Lewis, the assignee of G. M. Fountain, had no knowledge until after the sale of the land as to who was the principal in said note.

4. On 24 June, 1908, Howard Carr borrowed of L. H. Edmondson $133.50 and at the same time executed a note, under seal, for the same, due and payable 1 January, 1909, and mortgaged to him his one-fourth undivided interest in said land to secure the same, which mortgage was duly registered 1 July, 1908, and the said Edmondson had no knowledge of the facts set out in item 2 hereof, except as appeared of record.

5. On 17 March, 1909, the Edmondson note was assigned to P. A. Lewis for full value and without knowledge on the part of Lewis as to who was principal in the $500 note of L. E. Norfleet, dated 27 December, 1905. If Edmondson had known, at the time of taking said note and mortgage, that the interest of

Howard Carr in said land was alone subject to the payment of the Norfleet note of $500, he would not have loaned the money, and had P. A. Lewis known at the time of the transfer to him that Carr's interest was alone subject to the payment of the Norfleet debt, he would not have purchased the Edmondson note.

6. On 22 January, 1910, default having been made in the payment of the L. E. Norfleet note, J. M. Norfleet, trustee, sold the three-fourths undivided interest of Howard Carr, Maggie Williams, and Mollie Lewis, in the land described in the deed of trust, at public auction, after due advertisement, for $800, and after paying the cost of sale, taxes, and the amount due on the L. E. Norfleet note, there was left the sum of $373.72, of which amount $124.57 has been paid to Maggie Williams, $124.57 to Mollie Lewis, and he still has left $124.57. There was due upon the note to Edmondson, owned by P. A. Lewis, the sum of $142.25 as of the date of sale, and the sum of $124.57 in the hands of said trustee was claimed by P. A. Lewis under the Edmondson mortgage from Howard Carr, and is now claimed by Phillips, receiver.

7. In July, 1911, P. A. Lewis was duly adjudged a bankrupt, and H. H. Phillips was appointed receiver in bankruptcy of his estate, and now claims that the said sum of $124.57 should be paid on the Edmondson note and mortgage, and Maggie Williams and Mollie Lewis claim that it should be equally divided between them.

Upon the facts stated in the case, the court decided in favor of Maggie Williams and Mollie Lewis, and adjudged that the trustee pay the amount held by him to them equally, whereupon the receiver of P. A. Lewis appealed.

*W. O. Howard and J. M. Norfleet for M. Williams and M. Lewis.*

*G. M. T. Fountain & Son for receiver.*

WALKER, J., after stating the case: There has been difference of opinion among the courts as to whether parol evidence is admissible to show that a person, apparently a coprincipal in a note, is in fact a surety. Some courts have held that parol

evidence in such a case is incompetent, because it contradicts or varies the terms of the instrument signed by the surety; others hold that it does not tend to alter or vary either the terms or legal effect of the written instrument, but is simply proving a fact outside of such terms, collateral to the contract and no part of it, and that the evidence is perfectly competent in a court of law; while some others maintain that, though the evidence is incompetent in a court of law, it is competent in a court of equity. But in *Cole v. Fox,* 83 N. C., 463, it was said: "The weight of authority sustains the principle that the evidence is competent in a court of law, and more especially in our courts, having no separate jurisdiction of law and equity, where all the rights of the parties, both legal and equitable, must be adjudicated in any suit wherein they are litigated and drawn in question. So that, in referring to authorities, it is immaterial whether they are decisions of courts of law or equity." See, also, *Welfare v. Thompson,* 83 N. C., 276; *Goodman v. Litaker,* 84 N. C., 8. The admissibility of such evidence was fully considered in *Williams v. Glenn,* 92 N. C., 253, and it was held that, as between the makers and payee of a note, it is made for the purpose of being the proof of the contract, and cannot be contradicted by extrinsic proof. The only exception to this rule is in the classes of cases like *Welfare v. Thompson* and the other cases of that character cited above. But as between the signers, it was not made or intended to be exclusive proof of the agreement or relation between them. This may be shown by parol proof. "The makers, though all appearing to be joint principals, may be shown to be, some principals and some sureties; an apparent principal may be shown to be a surety; an apparent surety, a principal." Numerous cases were cited to sustain the proposition.

The question whether parol evidence will be admitted to show the true relation of the parties is not the one directly involved in this case, as the parties in their case agreed admit that, in fact, Howard Carr was the principal and the other two signers of the note were merely sureties, though they all appeared on the face of the papers to be coprincipals. But the cases we have cited establish the proposition that, as between the signers

of a note, the true relation may be shown, that is, that one who appears to be principal is a surety, or *vice versa,* for the purpose of enforcing exoneration, subrogation, or any other equitable right as between them, which will not injuriously affect the payee who loaned his money without knowledge of the relation.

The defendant contends, though, that while the court would exonerate the interests of Maggie Williams and Mollie Lewis *pro tanto,* by first applying the proceeds from the sale of Howard Carr's one-fourth interest in the land to the payment of the debt, and resorting to their interests only for the purpose of paying the balance due, if this were a suit between the said sureties and Howard Carr to enforce their equity, either of exoneration or subrogation, it will not do so in this case, as L. H. Edmondson loaned the money to Howard Carr and took a mortgage on his one-fourth interest in the land on the faith of the apparent relation of the parties as shown on the face of the deed of trust made by the parties to J. M. Norfleet, as trustee, to secure the debt due to L. E. Norfleet, and that being so, the interest of Carr is liable only for one-third of the Norfleet debt, and as Mrs. Williams and Mrs. Lewis have received each one-third of the balance of the proceeds in the hands of the trustee, J. M. Norfleet, for distribution, the money now in controversy should be paid to him as the receiver in bankruptcy of P. A. Lewis, who is the assignee of L. H. Edmondson.

This contention is based upon the assumption that Edmondson was a purchaser for value and without notice of the equity of Mrs. Williams and Mrs. Lewis. Is that assumption correct? We think not. When Edmondson took the mortgage on Carr's interest to secure his debt, he did not acquire the legal title, which is necessary to make a purchaser for value and without notice, but only an equitable interest, for Carr had only an equity of redemption under the deed of trust he made to Norfleet for L. E. Norfleet. The case is not to be distinguished, in principle, from *Polk v. Gallant,* 22 N. C., 395, in which *Chief Justice Ruffin* said: "Upon the argument, the counsel for the defendants placed not much stress on the defenses brought forward in the answer; and we think very properly, as they are

clearly insufficient. In the first place, the sheriff's sale is no bar, even if a legal title had been the subject of it, as the purchaser only succeeds to the defendant in the execution, and is affected by all the equities against him. *Freeman v. Hill,* 21 N. C., 389. Much more must this be so when the defendant in the execution has himself but an equity. If it be of that kind which is liable to be sold, the purchaser can only claim to stand in the shoes of the debtor, and get a title only by doing those acts on the performance of which the debtor himself would have been authorized to ask for a conveyance. Precisely on the same footing stands the purchase of the son from the father himself, which was of an equity only. It is only the honest purchaser of a legal title whom equity will not disturb. If the purchase be of the legal title, but with notice of an equity in another; or if it be only an assignment of an equity, with or without notice of a prior equity in another person: in either case, the estate must, in the hands of the purchaser, answer all the claims to which it would have been subject in the hands of the vendor. Between mere equities, the elder is the better. Against the present defendant, then, the plaintiff is entitled to all the relief which this Court would have given him against the original purchaser, for whom he was surety." *Green v. Crockett,* 22 N. C., 390. So in *Winborne v. Gorrell,* 38 N. C., 117, the Court says, referring to the same question: "This brings up for consideration the defense set up by the trustee and creditors claiming under Hanner's assignment, as peculiar to themselves, and founded on merits independent of those of Hanner and himself. They claim to be just creditors, who have honestly obtained a security for their debts without a knowledge of the plaintiff's equity, and, therefore, entitled to hold it. But they were mistaken in supposing that they had obtained a conveyance of this land as a security. They say they relied on the decree as determining the rights of the parties and constituting a title. But we have seen that is not so. The deed is only an assignment of an equitable title, and then, were these persons purchasers instead of creditors, the estate itself must answer all claims to which it would have been subject in the hands of the assignor. It is only the pur-

chaser of the legal title without notice of a prior equity who can hold against such equity. *Polk v. Gallant,* 22 N. C., 395." The case of *Wharton v. Moore,* 84 N. C., 479, presented a state of facts substantially like those in this case, and the Court thus ruled in regard to them: "The effect of these several convey- ances was to convey the legal estate of Russ and wife to Jones (or Thompson, the trustee, for his use), and the equity of redemption to J. B. Batchelor, and imperfect equities, first to Carter, the plaintiff's intestate, and then to Moore and Adams, the defendants. The releases of Jones and Batchelor indorsed on the deeds from Russ and wife, not being under seal, did not convey the legal estate to Moore and Adams, but left it in Jones or his trustee. *Linker v. Long,* 64 N. C., 296. So that the deed of bargain and sale executed by Russ and wife to Moore and Adams passed only such an interest as the vendors had at the time, which was a subsequent equity. The purchaser of an equitable title always takes it subject to prior equities. It is only the purchaser of the legal title, without notice of a prior equity, who can take it against such equity. *Winborne v. Gorrell,* 38 N. C., 117." Those cases, which have been fre- quently approved by this Court, are decisively against the appellant's contention.

In *Wharton v. Moore* the equitable estate acquired by the party claiming to be a *bona fide* purchaser was created by a deed of trust, and in *Polk v. Gallant* and *Winborne v. Gorrell* the Court protected the rights of sureties to subrogation or ex- oneration, as against the purchaser of an equity of redemption.

The equity of Mrs. Williams and Mrs. Lewis, who were really sureties of Carr, was that of subrogation. When Ed- mondson bought the interest of Carr, it was subject, with the interest of Mrs. Williams and Mrs. Lewis, to the Norfleet mort- gage, not only for the payment of the debt of Carr, but also by way of exoneration to the application of his interest to the pay- ment of the debt, so as to protect the rights of his sureties (*Winborne v. Gorrell, supra*), or if these interests had already been taken for the payment of the debt, they were immediately subrogated to the right and lien of the creditor, L. E. Norfleet, in respect to the interest of Howard Carr, their principal.

158—37

When Edmondson and Lewis purchased the equity of their vendor in the land they should have inquired as to the nature and extent of the encumbrance, and they would have ascertained that the interest of Carr in the land was liable for the whole debt, in the first instance, by way of exonerating his sureties, and, if they had already been compelled to pay the debt, by their substitution to the rights of the creditor and the security he held. So that the deed of trust to J. M. Norfleet secured not only the debt of L. E. Norfleet, but also the rights of the sureties of Carr, by equitable subrogation or exoneration, and it can make no difference in the result which of the equities was available to them. The equitable rights of the sureties accrued to them when they signed the note with their principal and gave the mortgage or deed of trust to secure it (*Nelson v. Williams*, 22 N. C., 118; *Green v. Crockett, ibid.*, at p. 392), and they existed, therefore, when Edmondson received his mortgage from Carr.

As the proceeds derived from the sale of the interest of Carr in the land were not sufficient to pay the debt, it follows that the amount now in the hands of the trustee belongs to Mrs. Williams and Mrs. Lewis, and the judge was right in so holding.

Affirmed.

HOKE, J., concurs in the result.