CLARK, J., dissenting. *Page 326 
The facts necessary to an understanding of the decision of the Court are sufficiently stated in the opinion of Associate Justice Burwell.
There was a verdict for plaintiffs, and from the judgment thereon defendants appealed.
The lot of land in controversy in this action was owned at the time of his death, in 1851, by S.W. Williams, to whose widow, Polly Williams, it was assigned as dower. She died in 1886. His heirs at law were his six children, three of whom, to wit, W. Gaston Williams, Frank N. Williams and Mary J. Smith, are plaintiffs, each claiming one-sixth part of said lot. The children of a daughter, who died in 1878, and who was the wife of the plaintiff, E. Jefferson Smith, are also plaintiffs and claim one-sixth part of said lot as heirs of their mother. The other two children of S.W. Williams are not parties to this action.
It is alleged in the complaint that the defendants hold said lot under the widow, who died as above stated in 1886, and also under a deed made to the defendant, Emily Johnson, by T. F. Lee, sheriff of Wake County, dated 26 April, 1873, he having sold the lot according to law on 7 April, 1873, under an execution issued to him from the Superior Court of said county against the widow and children of S.W. Williams and also against I. J. Flowers, the husband of one of the daughters, and Jefferson Smith (one of the plaintiffs in this action), the husband of another daughter, for a bill of costs amounting to $16.10, the consideration expressed in said deed being $18.05, bid by said defendant.
It is further alleged that the judgment for costs upon which the said execution was issued, was irregular and fraudulent. And the plaintiffs demand judgment, first, that the said judgment "be set aside as to these plaintiffs as being irregular and fraudulent"; second, that the (427) deed from T. F. Lee, sheriff, to Emily Johnson be delivered up for cancellation, and third, that they are the owners of the land described in the complaint.
The primary object of this action is, therefore, to have a judgment rendered against the plaintiffs in the Superior Court of Wake County in 1872 declared void because of fraud, and thus destroy the force and validity of defendant's title under the deed made to her by the sheriff.
In the complaint first filed the plaintiffs only alleged their ownership of the lot in controversy, and that defendants unlawfully withheld the *Page 327 
same from them and demanded possession thereof. The amended complaint changes the object of their suit to that above stated, their learned counsel thus conceding, as it seems, that they cannot oust the defendant from the land until they have first had vacated and set aside the judgment, execution and sheriff's deed thereunder, which constitute, as we think, the defendant's only muniment of title.
Upon the evidence adduced and under the instructions of his Honor, the jury have found that this judgment against the plaintiffs was procured by the fraud of the widow, the life tenant, and that the defendant, Emily Johnson, had notice of this fraud when she bought the land at the execution sale made under said judgment; and because of this fraud and defendant's notice thereof it was adjudged that the judgment, execution and deed were void.
Upon the trial the counsel for the defendants contended that there was no evidence that their clients had any notice of the alleged fraudulent conduct of the widow, and that the evidence offered to establish that fraud was incompetent against them.
His Honor decided that the evidence offered to establish the (428) alleged fraud was competent against the defendants, and that there was evidence from which the jury might infer that defendants had notice of that fraud, and he so instructed the jury.
In these respects we think he erred.
There seems to be little conflict in the testimony offered by the parties on the trial, and the conflict is about matter that appears to us immaterial.
It is alleged in the complaint and admitted in the answer that at Fall Term, 1863, of the Court of Equity of Wake County, an ex parte petition was filed by the late Sion H. Rogers, a practicing attorney of that court, in behalf of the widow and heirs of S.W. Williams (the husbands of the femescovert being also parties), asking that a sale of the lot here in controversy be made, in order that the fund arising from such sale might be reinvested in a tract of land to be held by the widow for life, and then to each of the other petitioners as tenants in common, according to their rights in the lot sold. This was accompanied by an affidavit of two persons that it was for the interest of all the parties that the sale should be made and the fund invested as proposed. No orders or decrees seem to have been made while the cause was pending in the Court of Equity, but it was transferred to the Superior Court in 1868, and was continued from term to term till Fall Term, 1872, when a judgment was entered against the petitioners for costs amounting to $16.10, and execution was issued and a sale was made to defendant, Emily Johnson, as heretofore stated. She was in possession of the premises at the time of the sale, and had been in possession since November, 1863, when *Page 328 
she had purchased the lot at the price of $2,500 from one Overby, who had bought it from W. H. High on 3 November, 1863. High had purchased it on 2 August, 1863, from one Harris Flowers, and the (429) latter held it under the following contract:
"Whereas the undersigned have this day sold to Harris Flowers and his heirs a lot of ground near the city of Raleigh . . . for the sum of $1,400; and whereas, some of the parties interested are under age; Now, know ye, that the undersigned Polly Williams, David Williams and S. N. Williams bind themselves, their heirs, executors and administrators, to make to the said Harris Flowers and his heirs a good and indefeasible title to the same, or cause to be made such title by procuring a decree of the Court of Equity securing said title, or by procuring the execution of a proper deed from the parties interested, whether of age now, or of nonage; and in default thereof we bind ourselves, our heirs, executors and administrators, in the full and just sum of $1,400, and all interest from this date, and all such costs as he may be put to by reason of a failure to have said title made as above obligated. In witness whereof," etc.
This contract was executed in July, 1863, and was registered soon after its execution, and the recitals in her deed were such as to give notice to her that those under whom she held claimed under this contract.
It was also proved that for two years prior to her purchase of the lot in 1863 the defendant, Emily Johnson, had occupied it as tenant of the widow, Polly Williams, to whom she was connected by marriage, her brother having married a sister of Polly Williams.
Such being the relation of the parties to one another and to the matter in controversy, the plaintiffs insist that they shall be permitted to prove that the petition in the Court of Equity of Wake County for the sale of the lot and the reinvestment of the fund was filed by Sion H. Rogers at the instance and request of the widow, and that neither he nor she had any authority from the plaintiffs to file that petition, (430) and that they had never ratified their action — that they were indeed ignorant of the fact that such a petition had been filed, or that any judgment for costs had been entered against them, or that any sale had been made thereunder till shortly before the bringing of this action, and that this petition was filed by the widow without the knowledge or consent of the heirs, and this judgment for costs, that had not been earned, was entered, and this sale under execution was made to cheat and defraud the heirs of S.W. Williams of the reversion in this lot.
The charge of fraud brought at this late day by the plaintiffs against their mother is founded upon the idea not that she did directly any act *Page 329 
to deprive them of their title, but that, without any authority from them, she employed a most respectable solicitor, able and faithful, to ask a Court of Equity to sell the lot and itself invest the proceeds in other real estate.
We deem it unnecessary to discuss the evidence that tends to prove or disprove this charge of fraud, for we find no testimony that in our opinion in any way goes to show that the defendant, Emily Johnson, knew that the solicitor who filed the petition was acting without authority from the clients he professed to represent, or that the widow was contriving to cheat and defraud her own children. The facts that she was distantly connected with the widow by marriage and that she and her husband had occupied the lot from 1861 to 1863 as her tenants go for nothing. The recitals in her deed pointing, as plaintiffs contend, to the contract made by the widow and set out above in full, seem to us rather an assurance that the proceeding to perfect the title through the intervention of a Court of Equity was properly instituted, and that all the parties to the petition had come in that court and (431) submitted themselves to its jurisdiction, than the contrary.
As the defendant had no notice that the solicitor had no authority to represent the petitioners, it is conclusively presumed as to her that he did have such authority, and no evidence tending to disprove the existence of such authority should have been admitted to overthrow rights which she had acquired while ignorant of such want of authority.
Attorneys and solicitors are officers of the courts. They are expressly empowered to represent litigants, plaintiffs and defendants, and parties who are about to acquire rights under the judgments of courts are not at all bound to inquire into the authority of the attorneys who profess to represent the plaintiffs or petitioners. It is said of such persons that they "come into court by their attorney"; it is not permitted to them to say that they did not so come when the rights of innocent third persons have intervened.
So far, then, as concerns the defendants, the Court of Equity of Wake County and its successor, the Superior Court, had jurisdiction of the persons named as petitioners in the petition for the sale of the lot, and, if it is conceded, as plaintiffs contend, that there was no decree for the sale of the lot, still a judgment against the petitioners for costs, not excepted to or appealed from, was binding upon them; for they were to all intents and purposes present in court and subject to its orders and judgments made in that proceeding. Upon this judgment for costs, which the plaintiffs now say they did not owe, but to which they then, though in theory present in court, offered no objection, an execution was issued and a sale was made. To that sale the defendant went in the person of her agent. She and the heirs were antagonists. Their interests *Page 330 
required that they should pay off this judgment for costs, and thus save their reversionary interests from sale. Her interests demanded (432) that she should perfect her defective title at as little cost to herself as possible. She had a right to presume that the sheriff had notified each one of the heirs of the sale, for the law (Laws 1868-69, ch. 237, sec. 11) required him to do so, and he was liable for damages if, through his failure to so notify them, any loss came to them. Being a stranger to the judgment, all that she was required to ascertain was that an officer was making the sale and that he was empowered to do so by a court of competent jurisdiction. Burton v. Spiers, 92 N.C. 503. She was not called upon to bid against herself, and, under the circumstances that surrounded her, she acquired by her bid and the deed made pursuant thereto a good title against the heirs of S.W. Williams named in the execution, and their heirs; for, having no notice of any irregularity or fraud in the judgment under which she bought, as we have seen, she had only to inquire if the court from which the execution issued had jurisdiction of the parties and the subject-matter. England v. Garner, 90 N.C. 197, and the cases there cited.
And as she was, as we have seen, in no way connected with the alleged fraud, the smallness of the price at which the lot was bid off by her cannot affect her title. These plaintiffs cannot be heard to complain that their property, sold under an execution of which they had notice (and as to these defendants such notice is conclusively presumed), brought too little. In Durant v. Crowell, 97 N.C. 367, the inadequacy of the price bid by the defendant, and at which the sale was confirmed to her, was held to be a fact from which she should have inferred that the title of the party whose title she acquired was not free from equities of the plaintiffs, but no such contention was made as that she did not acquire for the small sum bid the title of the party whose interest in the land was offered for sale. Creditors of the execution debtor may use inadequacy of price bid as evidence of fraud and collusion between (433) the purchaser and the debtor, as in Osborn v. Wilkes, 108 N.C. 671, but no case can be found, we think, that sustains the plaintiffs in their contention that they can use the inadequacy of price to destroy the title of one who bought their land at execution sale.
Taking this view of the matter in controversy, we do not deem it necessary to consider seriatim all the exceptions taken by defendants. They are entitled to a
NEW TRIAL.