F. C. DURANT et als. v. M. E. CROWELL and wife.

*Receiver—Evidence—Notice.*

1. Where the plaintiff establishes a *prima facie* right to property, which is not rebutted by the defendant, he is entitled to a receiver, if he shows that there is danger of loss of the rents and profits.

2. Only the purchaser of the legal title without notice of a prior equity can hold it against such equity.

3. The fact that the purchaser of the legal estate paid very much less than the land is worth, is evidence to show that he purchased with notice.

4. The value of the property in controversy cannot be considered in passing on the question of the solvency of the defendant.

5. Where there is danger of loss of rents and profits, instead of appointing a receiver the Court may allow the defendant to execute a bond to secure the rents and profits and such damages as may be adjudged the plaintiff.

(*Winborn* v. *Gorrell*, 3 Ired. Eq., 117; *Polk* v. *Gallant*, 2 Dev. & Bat. Eq., 395; *Hamlett* v. *Thompson*, 1 Ired. Eq., 360; *Kerchner* v. *Fairley*, 80 N. C., 24; *Rollins* v. *Henry*, 77 N. C., 467; *Kron* v. *Dennis*, 90 N. C., 327; *Lumber Co.* v. *Wallace*, 93 N. C., 23; cited and approved).

MOTION for a receiver *pendente lite*, in a CIVIL ACTION, pending in the Superior Court of UNION county, heard before *Graves, Judge,* at Chambers, at Shelby, on October 26th, 1886.

The plaintiffs allege, that in 1854, Jackson C. Lemmond and others, owners of the land in controversy, conveyed it for the consideration of $25,000, to Charles Judson and W. F. Durant, in fee, in trust for themselves and their associates.

That in June, 1857, said trustees, for the consideration of $1.00, conveyed the said land to Robert Taylor, in fee, and on the same day, the said associates, for the consideration of $1.00, released their interest to said Taylor. That these deeds were made to enable Taylor to borrow money upon a mort-

gage of the said land, for the benefit of the association, formed for mining purposes, and after he had done so, to convey the land to the said trustees, or to one of them, in trust for said associates; that in pursuance of this agreement, Taylor, on the 16th of July, 1857, borrowed of Thos. C. Durant the sum of $23,170, and conveyed to him, by a mortgage deed, the said land to secure the same; that in August, 1857, Taylor, in further pursuance of said agreement, conveyed the said land to Charles Judson, for the consideration of $1.00, in trust for himself and associates, subject to the mortgage to Durant; that in 1859, Thos. C. Durant assigned the said mortgage and the money due thereon to Chas. W. Durant; that the mortgage deed executed by Taylor to Durant to secure the loan was intended to be in fee, but by the ignorance, inadvertence, or mistake of the draftsman, by the omission of the word " heirs", a life estate instead of a fee, was conveyed; that at the time of the execution of the mortgage, and ever since, Taylor had his residence and domicil in New York, and that at the said time, and up to the dates of their deaths, respectively, Thos. C. Durant and Charles W. Durant were domiciled in New York, and Charles Judson and the other associates, except Hugh Downing, were non-residents of this State, the said Hugh Downing alone of said associates having resided in Union county, and that in 1861, he took possession of said land, as one of the associates, and as agent of the trustees; that in 1867, he contracted with C. W. Durant to purchase his interest in the land, under the mortgage, and retained possession till 1878, recognizing the right of the trustee and the existence of the mortgage, and that the mortgage debt had not been paid, and no part of the consideration under the contract to purchase the interest of Durant had been paid; that Downing died in 1870, when his administrator took possession of the land, and held it until 1878, after which time, one Wager entered into possession, recognizing

the right and interest of Charles W. Durant, as the adminis-trator of Downing, had done, and, by an agreement in writing, promised to pay $50 per year, for the term of five years as rent therefor; that while the said Wager was in possession in 1878, under a special proceeding for the pur-pose of a sale of the interest of Hugh Downing, to make assets to pay his debts, the interest of the said Downing in said land was sold, and purchased by the *feme* defendant, at the price of $66; that at the time of said sale, the land was worth, for agricultural purposes, at least $8,000, besides its great mineral value, and that the said purchaser had full knowledge of the mortgage, and was not a purchaser for value or without notice.

The plaintiff Heloise, and W. W. Durant are the heirs at law of Thos. C. Durant, and the said W. W. is his adminis-trator; the plaintiff F. C. Durant is the executor of Chas. W. Durant, deceased, and is entitled to receive the amount that may be found due upon the said mortgage, and the other plaintiffs are necessary parties.

It is alleged that the defendants are in possession and in-solvent, and that if permitted to remain in possession and receive the rents and profits, (which are alleged to be $600.00 per annum,) the plaintiffs will sustain irreparable damage.

The prayer is for the appointment of a receiver—the cor-rection and reformation of the mortgage deed—the fore-closure of the mortgage and payment of the debt secured thereby, and an account, &c.

The defendants answer, and deny that the deeds to Tay-lor were made for the purposes alleged, or that there was any mistake in the mortgage deed; or that the mortgage debt has not been paid. They also deny the alleged contract be-tween Durant and Downing. They aver that the *feme* de-fendant purchased the land at the price of $66.00 under the special proceeding set out in the complaint, and in March, 1880, received a deed from the commissioner for the same,

24*

and that the plaintiffs have had possession under said deed to the bringing of this action. They further say, that in April, 1881, Chas. Judson, for the consideration of $1.00, released his interest to Wager, and that in the same month, Wager, for the same consideration, conveyed to the defendant. They say that at the time of the purchase of the land, $2,500 was as much as it could have been sold for on the market, and $4,000 would be a fair valuation, &c., and that the annual rental value at the time of the purchase, was not more than $100, and at present, will not exceed $400.

They deny any knowledge that the mortgage was an encumbrance upon the land, to the extent of the fee, and say that the *feme* defendant purchased at a fair and public sale, as the highest bidder, without any notice of any equity, &c.

His Honor refused to appoint a receiver, and the plaintiffs appealed.

*Messrs. Platt D. Walker* and *A. Burwell*, for the plaintiffs.
*Messrs. D. A. Covington* and *Adams* filed a brief, for the defendants.

DAVIS, J., (after stating the facts). Without considering in detail the voluminous evidence contained in the record, it appears from the mortgage deed, executed by Taylor to Durant on the 6th day of July, 1857, that the land in controversy was conveyed to the said Durant to secure the payment of $23,170, borrowed, and from the evidence, this was largely more than the agricultural value of the land, and though it was of considerable value for mining purposes, it was much more than the value of a life estate therein.

This inherent fact, and the affidavit of Taylor, who executed the mortgage deed, to the effect that it was the understanding and agreement of the parties that the land should be conveyed in fee to secure the said loan, and that it was by the ignorance, mistake or inadvertence of himself

and Durant, or of the draftsman of the mortgage, that words of inheritance were omitted—that no part of the said mortgage debt has been paid, but that every part thereof is still due and payable—that at the time of the execution of the mortgage, it was undertood and agreed, and so expressed in the mortgage, that he was not to be personally liable for the said debt, but that the land was to be the only security, establish an *apparent right* in the plaintiff, to have the deed corrected and reformed. The deed of June 26th, 1857, executed by Durant and Judson to Taylor, conveyed a fee, and the mortgage deed refers to it, and purports to convey " all the estate, title and interest, dower and right of dower, of the said parties of the first part therein," making it apparent that the estate in fee was intended as a security for the debt. But the *feme* defendant says she was a purchaser at a fair and open public sale, and as the highest bidder, without notice, &c., and it is insisted that, as against her, all the equities of the plaintiffs are fully met.

The land was bid off, says the answer, by Wager and Asbury for the *feme* defendant. It was worth, according to the answer $2,500 " on the market." Flow, the administrator of Downing and the commissioner who sold the land, makes oath, in effect, that he never believed that the title of his intestate was good, and that he had frequently told his (Downing's) heirs, that he did not have a title—that he had heard Downing say that he held the land for others.

Howie states in his affidavit, in substance, that he rented a portion of the land in question for several years ; that frequently during that time Downing told him that he (Downing) held the land for the Durants, who held the mortgage ; that he was the agent for the Durants merely. That after the death of Downing, he continued on the land and paid rent to James Flow, the administrator of Downing, and sometimes to Mrs. Wager, the daughter of Downing, or to W. H. D. Wager, till about 1878, when he heard that Gen. Rufus

Barringer, of Charlotte, was Durant's agent, and signed a paper agreeing to hold the land in his possession as tenant of said Durant, and that this writing, which is filed as an exhibit, was witnessed by James Flow, the administrator of Downing.

Cochrane, another witness, makes affidavit upon information and belief, that it was announced at the sale, before the bidding commenced, so that the announcement could be heard by all present, that only the interest of Downing was sold, and that it was bid off by Wager and Asbury with full knowledge of the fact.

Mr. Barringer makes affidavit, that he was in 1867 employed as attorney and agent for Durant, and sets out, in detail, an arrangement with Hugh Downing, under which he remained in possession of the land, recognizing the encumbrance of the mortgage and its lien upon the land, and after his death, an arrangement with the heirs of Hugh Downing, under which they were to hold the land for five years. "That from the death of Hugh Downing, until 1882–'3, his active administrator (Jas. Flow) and his heirs at law frequently and from time to time admitted to affiant that the said mortgage debt was unpaid, and was a subsisting lien upon the land, and that during the period of affiant's agency for Durant, which agency was well known to the administrator and heirs of Downing and Wager, and to the defendant, M. E. Crowell, as far back as 1878, * * * * there was no adverse possession to affiant as agent up to 1882, or 1883. That defendant M. E. Crowell was present during the negotiations which resulted in the contract for a lease, * * * * and that neither he, in his own right or otherwise, nor his wife, ever claimed the land, till the year 1882, or '83." That under the contract of lease, the rents were paid by Wager for the years 1880, '81 and '82.

There are also letters of Downing, written in 1866, filed as exhibits, recognizing the mortgage debt as a lien upon the property.

It appears that the parties interested in the mortgage resided in New York, and the mineral value of the land was of chief consideration with them, and the negotiations referred to by Mr. Barringer in his affidavit account for the delay in bringing the action.

These facts, taken in connection with the vast disproportion between the price paid by the *feme* defendant and the actual value of the land, would seem to fix the defendant with notice. The fact that property, worth at the lowest estimate $2,500, and, according to some of the evidence, $8,000, for agricultural purposes, with a large speculative value for mining purposes, should be bid off at the insignificant price of $66, was certainly sufficient to put her on inquiry. "Only the purchaser of the legal title, without notice of a prior equity, can hold against such equity;" *Winborn* v. *Gorrell*, 3 Ired. Eq., 117; *Polk* v. *Gallant*, 2 D. & B. Eq., 395; *Hamlett* v. *Thompson*, 1 Ired. Eq., 360.

In this case, the defendant acquired only the title which Downing had, which was not a legal title, if any title at all. We think the plaintiffs have established an apparent right to have the mortgage deed reformed and the property sold to pay the debt, and that this apparent right is not sufficiently controverted by the answer, and if there is danger of the rents and profits being lost, they are entitled to have a receiver. The plaintiffs allege the insolvency of the defendants, and danger of loss; the defendants admit the insolvency of M. E. Crowell, but say that the *feme* defendant is entirely solvent, and worth $2,500 or $3,000 in excess of her exemptions. The only other evidence upon this point is: 1st. The affidavit of James Flow, in which he says: "that the said Delia A. Crowell had no property at her marriage, in her own right, and has since owned none, except the tract of land claimed by her in this action;" 2d. The certificate of the property listed by M. E. Crowell, agent for D. A. Crowell, in 1886, amounting to $4,647, of which $4,000 is for

the land in dispute in this action. Of course the value of the land in controversy can not be considered in determining the security to which the plaintiffs are entitled, and where there is imminent danger of loss by insolvency of the defendant, it is within the rightful authority and the duty of the Court to secure the rents and profits, through the appointment of a receiver; *Kerchner* v. *Fairley*, 80 N. C., 24; *Rollins* v. *Henry*, 77 N. C., 467; *Kron* v. *Dennis*, 90 N. C., 327; or to permit the defendant to remain in possession, upon the execution of a bond, payable to the plaintiff, with security approved by the Court in such sum as may be deemed sufficient to secure the rents and profits and such damages as may be adjudged in favor of the plaintiff, upon a final determination of the action. *Lumber Company* v. *Wallace*, 93 N. C., 23.

There was error in refusing to allow the motion of the plaintiffs.

Let this be certified, to the end that the Court below may make such order in the cause, in accordance with this opinion, as will secure the plaintiffs against loss by reason of the insolvency of the defendants.

Error.                                                    Reversed.