Error.

---

J. C. LITTLE, RECEIVER, v. BENJAMIN FLEISHMAN ET ALS.

(Filed 3 January, 1919.)

1. **Receivers—Corporations— Vendor and Purchaser— Contracts— Tender— Actions.**

    Where the receiver of a corporation takes possession, without order of court, of its stock of merchandise in the hands of a purchaser, who has acquired the title and is ready, able and willing to pay the agreed price, and tenders the merchandise to the purchaser, the tender so made is unnecessary, and the only remedy of the receiver against the purchaser was to demand payment of the price, and upon refusal to sue for its recovery.

2. **Receivers— Corporations— Orders— Jurisdiction — Corporate Property— Personal Liability.**

    An order of the court directing the receiver of a corporation to take possession of property not belonging to the corporation exceeds its jurisdiction and will not protect the receiver acting under it.

LITTLE v. FLEISHMAN.

**3. Receivers— Corporations— Vendor and Purchaser — Contracts — Sales— Consideration—Actions.**

Where a receiver of a corporation has taken possession of, and sold under an order of court, a stock of goods which the corporation had previously sold and passed title to the purchaser, the purchase price remaining unpaid, the order of court and the act of the receiver thereunder was wrongful to the purchaser, destroying the subject-matter of the contract and working a failure of the consideration, and a recovery by the receiver against the purchaser for the contract price, or any part thereof, would be inequitable and unjust.

**4. Vendor and Purchaser—Sales—Title—Contracts.**

*Semble*, where a corporation has sold and delivered its stock of goods, and the contract has been fully performed with the exception of the payment of the agreed purchase price, which the purchaser was ready, willing and able to do, but refused to do so upon the appointment of a receiver, the title to the merchandise passed to the purchaser from the corporation.

**5. Receivers — Corporations — Vendor and Purchaser — Tender — Wrongful Act—Motive.**

Where the receiver of a corporation has wrongfully taken possession of its stock of merchandise which the corporation had previously sold to a purchaser, the motive of the receiver cannot change the legal quality of his wrongful act.

**6. Receivers—Corporations—Vendor and Purchaser—Sales in Bulk—Statutes—Waiver.**

Where the merchandise of a corporation has been sold by it in bulk without complying with the statute, Revisal, sec. 964a, and a receiver has been thereafter appointed by the court, a tender of the merchandise by the receiver to the purchaser, after the latter had refused to take them, is not a waiver by the creditors of the corporation of the compliance with the statute, and an undisclosed purpose of the creditors to that effect is insufficient.

**7. Receivers—Statutes—Merchandise in Bulk—Sales.**

The provision in Revisal, sec. 964a, as to sales of merchandise in bulk, that the act shall not apply, among other things, to sales by receivers, etc., does not apply where a corporation has sold its merchandise in bulk before the appointment of a receiver, but only to a sale by the receiver, etc.

**8. Corporations— Goodwill— Assets— Consideration — Receivers — Corporations.**

Where a mercantile corporation has sold its stock of goods, together with its goodwill as a going concern, and before the payment of the purchase price a receiver has been appointed, who takes possession thereof, destroys the goodwill, and sues the purchaser for the agreed purchase price, after making tender of the merchandise, the goodwill is regarded as a material inducement and consideration for the contract of sale, and upon a failure of performance in this respect the purchaser may refuse the tender and performance on his part.

**9. Corporations—Goodwill—Value—Receivers—Equity.**

Where the receiver of a corporation has taken possession of its merchandise for its creditors and destroyed its goodwill as a going concern,

he may not in behalf of the creditors enforce a contract of sale of the property and goodwill of the corporation made before his appointment, and, taking advantage of the wrong done the purchaser, assert that the goodwill was valueless.

**10. Corporations—Goodwill—Value—Evidence—Receivers.**

Where a corporation has sold its merchandise and business as a going concern, and thereafter a receiver is appointed, who wrongfully takes possession and sells the goods at a much less sum, it is evidence of loss of value caused by the destruction of the goodwill of the concern.

ACTION tried before *Calvert, J.,* at July Term, 1918, of WAKE.

The action was brought by the plaintiff, as receiver of the Raleigh Department Store, Inc. (hereinafter called the store), to recover of the defendants the sum of $2,621.56, which he alleges to be due to him as receiver, it being the difference between the net proceeds of the sale of a stock of goods sold by him officially, viz., $7,427.10, and the price of the stock which, as he alleges, the defendant agreed to pay the store for the same.

The defendants denied the liability, and averred that the contract of sale had not been completed; that the stock of goods were sold in bulk by the store, and the provisions of Revisal, sec. 964a were not complied with, that the creditors, by their own unauthorized and illegal action, defeated the consummation of the contract by taking the goods from the possession of the defendants' servant, who had been placed in charge by them; that while the parties—that is, the defendants and the store— were engaged in closing up the contract, and before the purchase price had been paid, plaintiff, at the instance and request of some of the creditors, was appointed receiver in an action commenced by them in the Superior Court of Wake County, and took the goods from the possession of defendants' caretaker, afterwards selling the same for a greatly reduced price at public auction. Defendants claimed that not only were the goods contracted to be sold to them, but also the goodwill of the Department Store, which, at the time, was a going concern, although somewhat embarrassed financially; that by the plaintiff's action, as above described, the main purpose of the parties in making the contract of sale was altogether frustrated, and the contract became valueless to the defendants, the consideration upon which it was based having utterly failed.

Plaintiff contended that he took possession of the goods for the purpose of tendering them to the defendants, in furtherance of a due execution of the contract, intending that upon payment of the price by the defendants, to wit, $10,308.68, to deliver the goods to them, and that afterwards, on 11th or 12th September, 1918, the court made an order to that effect. The price, by agreement of the parties to the contract,

was to be paid in the city of Baltimore, and while in that city for the purpose of arranging some matters with a view to the payment of the money the suit was brought in Raleigh and the receiver appointed, whereupon the defendants, as soon as notified of the receivership, renounced the trade and refused to proceed further with the contract and rescinded the same. This was done on 4 September, 1918, and it was afterwards, on 11 September, 1918, that the court by its order appointed plaintiff permanent receiver and directed him to tender the goods to the defendant. Plaintiff, as temporary receiver, had on 31 August, 1918, been given "authority to take possession of the property, assets and effects of the Raleigh Department Store, Inc., and hold the same subject to the further order of the court," and plaintiff on 1 September, 1918, qualified as receiver and took possession of the goods, as before stated.

The parties waived a jury trial and consented that the judge should find the facts, which was done, the findings being mainly in favor of the defendants, and the judgment being rendered upon the facts for them. Other facts will be found in the opinion of the court. Plaintiff appealed.

*J. H. Pou and John W. Hinsdale for plaintiff.*

*R. W. Winston, J. Crawford Biggs, and Baldwin & Sappington for defendants.*

WALKER, J., after stating the facts: The goods were delivered to the defendants at Raleigh, where the business of the Raleigh Department Store had been conducted, and remained in the store under the care of a servant of the defendants. The plaintiff contends in two of its assignments of error, and in its brief, that the title thereby passed to the defendants. If this be so, the receiver had no right to take possession of the goods, nor did the court have any power to make the order requiring him to do so. If the title was in defendants, even the plaintiff, acting as receiver, and under an order of the court in a suit to which defendants were not parties, could not seize the goods. He could not do so for the purpose of tendering them to the defendants under the contract of sale, because he could not tender defendants' own goods to them; and, besides, when he seized the goods, no order of the court requiring a tender to be made had been granted. It may further be said that no tender was necessary, as the goods were already in the possession of defendants, and the defendants, as we have stated, contended that the title had thereby vested in them. The only remedy of the receiver was to demand payment of the price, and if the demand was refused, to sue for its recovery. It was a very simple remedy, as the defendants were not only perfectly solvent, but, to use plaintiff's own description of their financial rating,

as set forth in his brief, they were, as a firm, a "strong, wealthy and successful concern."

A court cannot, by ordering a thing to be done, such as the seizure of property, make it lawful for its receiver to do it, when the property belongs to another, and not to the insolvent concern, whose assets only are subject to its custody. It exceeds its jurisdiction, and its order is invalid and confers no lawful authority to seize the property. In this view of the case, that the title passed to the defendants when it received possession of the goods of the Raleigh Department Store, Inc., the court, by its order and through its receiver, having caused the property to be wrongfully taken, would not permit its receiver to recover the price of the goods, or any part of it, in a case like this, because by seizing and selling them it has destroyed the subject matter of the contract and worked a failure of the consideration, upon which the promise to pay the price of the goods was based. It would be unjust and inequitable to permit a recovery under such circumstances. The property was taken innocently, as no wrong was intended, but in a legal sense it did not affect the defendants' right to it, though they lost the possession.

Excluding from consideration at present the bulk-sales law and its effect upon this contract, we are disposed to agree with the plaintiff's contention, as stated in his brief, that the title did pass by the delivery of the goods to the defendants in the store at Raleigh, and their exercise of the right of ownership by placing their servant in charge of them, the price being fixed, and the parties having gone to Baltimore for the purpose of paying the money there to the creditors of the department store. *Phifer v. Erwin,* 100 N. C., 69; *Wittowsky v. Wasson,* 71 N. C., 451; *McArthur v. Mathews,* 133 N. C., 143; *Foley v. Mason,* 3 Md., 37; *Leedom v. Phillips,* 1 Yeates (Pa.), 527.

There was nothing to be done by the buyer or seller as a condition precedent, or concurrent, upon which the passing of the property in the goods depended. When there is such a condition, and it *is* unperformed, the title, of course, will not pass, even though the goods may have been left in the possession of the buyer, and this is according to the third rule of Mr. Benjamin in his Treatise on Sales, 318, as explained in *Hughes v. Knott,* 138 N. C., at p. 110. The buyers had the goods and were ready to pay the price. This but exhibits more clearly the mistake in seizing the goods, which belonged to the defendants, and which the receiver had no right to take and the court no power to order them into his possession. His plain and only remedy was to sue for the price, and in doing so he perhaps might have attached the goods, as defendants were nonresidents, but this he did not do; and one cannot gain possession of property belonging to another than the debtor, and apply it, or its proceeds, to the satisfaction of a debt due by the latter, who was the

former owner, there being no fraud alleged or shown in the passage of the title. *Smith v. Young,* 109 N. C., 224. It may also be said that by seizing the goods he left the matter open to the defendants to accept it, if so minded, as an act of rescission, and the defendants did so treat it by refusing to complete the execution of the contract. It can make no difference what plaintiff's motive was in seizing the property of the defendants, for his motive, however good or commendable, cannot change the legal quality of his act. Under certain circumstances not now presented, it could affect only the damages (38 Cyc., 1002 and 1003), and the tender of the goods likewise could only go in mitigation of damages, if there was a legal tender at all. *Ward v. Moffitt,* 38 Mo. App., 395.

We will now consider the case upon the assumption that there was no vesting of the title to the goods in the defendants, but that the contract had not passed out of its executory stage, as the parties have dealt with it on this assumption in their briefs and the argument before us, and have devoted a large part of their attention and discussion to that feature of the case.

The judge finds as facts that while the defendants were in Baltimore preparing to pay the price of the goods, for the purpose of its distribution among creditors, the receiver was appointed and took possession of them, without any notice to the defendants, and the latter did not acquire any knowledge of it, nor were they in any way notified of the receivership until 4 September, 1918, when they at once repudiated the contract and refused longer to be bound by it. He also finds that what was done tended to discredit the business of a going concern, and would give to the property the reputation of a bankrupt stock of goods and impair the goodwill and diminish the value of the stock as one to be thereafter sold in the retail trade, which was the understanding and purpose of the parties in making the contract—that is, that the goods were bought from a going concern to be sold by defendants in continuation of the business at the same stand as an active, solvent concern, with the advantage of the goodwill of the seller. The tender of the goods was not made, or ordered to be made, until several days after the defendants had repudiated the contract; and it also appears that the "bulk sales" statute, before cited, was not complied with, though plaintiff contends that a receiver could waive compliance with the statute and pass a good title, as against creditors, to the defendants. We are of the opinion that he could not, as at the time the defendants refused to comply with the contract, and before the plaintiff was authorized to tender the goods, all of the creditors had not waived objection to the sale, and the conditions set forth in the statute had not been performed. The judge expressly finds as a fact that before the appointment of plaintiff as temporary receiver no creditor had consented to the sale to defendants, except the Baltimore

Bargain House, and after he was appointed there was no objection to the sale except by two, as to the payment of the price in Baltimore, instead of in Raleigh. This is not what the law required. The finding means, at most, that there was merely an undisclosed purpose not to disapprove and no formal and express waiver of objection, as there should have been.

Revisal, sec. 964a, declares that a bulk stock sale shall be *prima facie* fraudulent and void unless certain things are done by the seller, and these conditions precedent confessedly were not complied with, as we have said. The buyers were not required to rely upon the unexpressed intentions of the creditors, but were entitled to a positive waiver of these requirements, one upon which defendants could safely rely, if that would have been sufficient. But the plaintiff contends that the statute does not apply to receivers. That part of it reads: "Nothing herein shall prevent voluntary assignments or deeds of trust for the benefit of creditors as now allowed by law, or apply *to sales* by executors, administrators, receivers or assignees under voluntary assignments for the benefit of creditors, trustees in bankruptcy, or by any public officers under judicial process." (*Italics ours.*) It is manifest that the exceptions named in the section are restricted to sales made by those persons or officers. This sale was not made by the plaintiff, but by the department store, before he was ever appointed, and is not exempted by that clause. The sale could then have been avoided by any one creditor, and therefore it was not at the time the defendants repudiated it a valid contract, or such a one as required them to accept a tender of the goods or to pay the price. Besides, at the time of the tender, the value of the goods and the goodwill, which clearly passed and was clearly intended by the parties to pass by the transactions to the defendants, were so impaired— and by the conduct of the creditors in bringing suit having a receiver appointed and seizing the goods—that even if otherwise bound by the contract the defendants had a right to refuse the tender and performance of the contract. 6 R. C. L., sec. 380, 381; 13 Corpus Juris., sec. 721, 724, 733; 9 Cyc., 631; Clark on Contracts (2d Ed.), pp. 474, 475, 476, 479.

The Court finds that "the goodwill of the going concern was a valuable asset and a material inducement to and consideration of the contract." Plaintiff insists that the destruction must be of all or a material part of the property, and that depreciation must be substantial, in order to give the purchaser the right to rescind. We think this was the case, even regardless of the special findings. Our common-sense, observation and experience teaches us that much. It does not require technical knowledge or skill for that purpose. The conduct of the creditors, acting through the court and the receiver, was bound to seriously impair

the benefits to be derived from the contract, including the goodwill, and was well calculated to entirely defeat its object and purpose, as understood by the parties.

As to the "goodwill," which evidently passed as it was a general sale of the store's assets, we may accept plaintiff's definition of it as being "the probability that former customers will resort to the old stand," and we still think it was a thing of value. (*Bloom v. Home Ins. Agency,* 121 S. W., 293; 91 Ark., 367, cited by plaintiff). But the latter's counsel contended that impairment of the goodwill was not sufficient ground for a rescission of the contract or its nonperformance. Granting this to be true, for the sake of argument, the virtual destruction of the goodwill and the property by its complete and wrongful appropriation must surely be sufficient.

Again we say that the plaintiff pursued the wrong course, for which the defendants are not responsible, and should not be made to suffer. The creditors, through the plaintiff, will not be heard to assert that the goodwill was of no value when it was their own fault that it was rendered valueless. If they had not interfered and prevented a complete execution of the contract, it would have been of value to defendants in the further prosecution of the business of the store, which was a going concern, at the old stand. Everything that the plaintiff claims that defendants should have done, or should have proved, was prevented from being done or being proved by the creditors' own fault. That no man should be permitted to take advantage of his own wrong is not only a principle of the common law, but a maxim of general jurisprudence which is well recognized and established. It is based on elementary principles, and is applied both in courts of law and of equity, the reasonableness and necessity of the rule being manifest. It is of such general application that it admits of illustration from every branch of legal procedure, and is one of the basic principles which govern this case. Broom's Legal Maxims (6 Am. Ed.), p. 212, star p. 275, and cases. It applies, even though the actual wrong was unconsciously committed, which we have no doubt was the case here.

We need not discuss the point as to the retention of the lease by the defendants. The department store is well rid of it. It would have been a burden and encumbrance if it had kept it, and there is not the slightest prospect of its ever needing it. As we have said, it is a recognized principle in the law that a party cannot take any advantage from his own wrong. The creditors, by the receiver, have brought this unfortunate situation upon themselves and must abide the consequences. If they had sought the remedy in an action for the price, defendants being fully solvent, according to their own estimate of them, there would have been no ground of complaint. They have the stock of goods, and have lost

the goodwill and the lease, if of any tangible value, by their own act. and by no fault of plaintiffs, who are not parties to the other action.

We have not yet understood why a tender was at all necessary, as the goods were already in the possession of the defendants. Why take them out of their possession in order to put them back again? The more clearly the facts of this case are revealed to us the more apparent it seems that the only remedy of the plaintiff—and, too, an effective one—was by a simple action to recover the price of the goods. If this had been brought there would have been no confusion, difficulty or delay, as defendants, it now appears, were willing to pay in Raleigh, though we do not think they were legally required to pay the price there. If some of the creditors wanted it paid in Raleigh, why could not the seller and buyer agree just as well, for their convenience or for any other good reason they had, that it should be paid in Baltimore? We perceive no practical difference it would make if it were paid in one place rather than the other. Proper provision it seems had been made for its distribution by a solvent concern and with adequate protection to the rights of the creditors.

Our decision upon these, the material questions in the case, renders it unnecessary to consider the remaining and very numerous exceptions. We think, though, that as the stock of goods was sold to the defendants much below cost, and by the receiver nearly three thousand dollars less than the defendants gave for it, it was some evidence of a loss in value, and even of a great depreciation.

The rulings and final decision of the court were in all respects correct. Affirmed.