EUGENE H. WILSON v. COMMERCIAL FINANCE COMPANY AND MIKE DISHER.

(Filed 29 January, 1954.)

**1. Sales § 11—**

A cash sale is one in which the title to the property and the purchase price pass simultaneously, and title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer.

**2. Same—**

Even though the contract be for a cash sale, title will pass to the buyer without payment if the seller waives his right to immediate cash payment by language or conduct manifesting an intention on his part to abandon or relinquish this right, but acceptance of a check is not such a waiver, and if the check is dishonored title does not pass.

**3. Payment § 2—**

In the absence of an agreement to the contrary, the delivery and acceptance of a check does not constitute payment of the item covered by it until the check itself is paid by the bank on which it is drawn.

**4. Sales § 12—**

If the possessor of a chattel has no title, a *bona fide* purchaser from him acquires no property right therein unless the true owner authorizes or ratifies the sale, or is estopped to assert his title.

**5. Same: Chattel Mortgages § 13—**

In the absence of estoppel, the true owner who is induced to part with possession by fraud may reclaim his chattel from a *bona fide* purchaser from or under the person obtaining such possession; but if the true owner is induced to part with title by fraud he may not reclaim the chattel from

a *bona fide* purchaser from the fraudulent buyer. This rule applies to a mortgagee of the person obtaining possession or title from the owner by fraud.

**6. Same: Estoppel § 6d—**

The fact that he has entrusted the bare possession of a chattel to another does not estop the true owner from denying such possessor's authority to sell or encumber it, but if the true owner invests the possessor with *indicia* of title, the true owner is estopped to claim ownership of the chattel as against an innocent purchaser or encumbrancer who pays value or loans money to the possessor in reliance thereon.

**7. Same: Automobiles § 5—Owner held not estopped to assert title as against mortgagee of purchaser giving worthless check for cash sale.**

The purchaser of an automobile under agreement for a cash sale gave his check for the purchase price, and the owner surrendered possession of the car and the unsigned registration card, but retained the certificate of title constituting the sole evidence of title under the law of the State of the owner's residence. The purchaser mortgaged the car. The check was dishonored. Upon repeated demand of the owner by long distance telephone, the purchaser made assurances that he would make the check good, and then advised the owner, while allegedly talking from the mortgagee's office, to draw a sight draft on the mortgagee. The mortgagee refused to pay the draft and took possession of the automobile. *Held:* Title did not pass to the mortgagee even though he took the mortgage in good faith, for value, and without notice, and the owner is not estopped to assert his title, since the unsigned registration card could in no event be an *indicium* of title, and the owner's conduct did not manifest an intent on his part to abandon or relinquish his right to cash payment.

**8. Estoppel § 11b—**

The burden of proof on the issue of estoppel is on the party asserting this defense.

**9. Appeal and Error § 39c—**

The admission of evidence over objection cannot be held prejudicial when substantially the same evidence is admitted without objection.

**10. Evidence § 46—**

Reference by a witness to his certificate of title to his automobile as "the title" to his car will not be held prejudicial when it appears that the witness was merely identifying the certificate preparatory to its introduction in evidence and was not testifying as to its contents or legal effect.

**11. Sales § 11: Estoppel § 11b—**

Whether the seller under a contract for a cash sale abandoned or relinquished his right to demand immediate cash payment was put in issue. *Held:* Testimony that upon dishonor of the check given in payment of the purchase price, the seller caused a sight draft to be drawn on the purchaser's mortgagee at the instance of the purchaser, and the draft itself, are competent in evidence to show the seller's state of mind after he learned of the nonpayment of the purchaser's check.

**12. Trial § 7—**

Where there is evidence that the mortgagee took his mortgage immediately after the mortgagor obtained possession, applied a large part of the proceeds of the loan to a pre-existing debt of the mortgagor, and falsely denied possession of the chattel when the true owner sought information after the disappearance of the mortgagor, *held* argument of counsel that the mortgagee attempted to practice a fraud upon the true owner is not beyond the bounds of propriety.

**13. Appeal and Error § 6c (6)—**

A misstatement of the contentions must be brought to the trial court's attention in apt time.

APPEAL by defendant Commercial Finance Company from *Godwin, Special Judge,* and a jury, at June Term, 1953, of FORSYTH.

Civil action for the recovery of an automobile.

Mike Disher, who was originally a party defendant, has been dismissed from the action by a voluntary nonsuit. For ease of narration, Eugene H. Wilson is called the plaintiff; the Commercial Finance Company is characterized as the defendant; and Paul Allen Duncan and Robert E. Bush are designated by their surnames. The defendant is a corporation which maintains an office at Winston-Salem, North Carolina, where it loans money on the security of motor vehicles.

Certain matters antedating this litigation are virtually undisputed. They are summarized in the numbered paragraphs set forth below.

1. The plaintiff, a resident of Radford, Virginia, owned a Chrysler automobile, which was registered with the Virginia Division of Motor Vehicles in conformity with Virginia law. As a consequence, the Chrysler was covered by a Virginia certificate of title and a Virginia registration card.

2. On 18 November, 1952, the plaintiff authorized Duncan to drive his Chrysler automobile from Virginia to North Carolina, and sell it in his behalf to any North Carolina automobile dealer who would pay him not less than $1,450.00 in cash for it. The plaintiff entrusted to Duncan in addition to the Chrysler and its operating keys his Virginia registration card, but he left the notice of transfer form on the reverse side of such card unsigned. He retained his Virginia certificate of title.

3. Pursuant to the authority given him by the plaintiff, Duncan drove the Chrysler to Winston-Salem, North Carolina, where he had the following transaction with Bush, a second-hand automobile dealer, who was a stranger to him and the plaintiff: Duncan and Bush made an oral agreement whereby Duncan agreed to sell Bush the plaintiff's automobile for a cash price of $1,450.00. Bush tendered Duncan his check for that amount drawn to the order of the plaintiff on the Bank of Kernersville, of Kernersville, North Carolina. Duncan believed the check to be good,

and accepted it as the means of payment of the sale price. As a consequence, Duncan delivered the Chrysler, the keys necessary to its operation, and the unsigned Virginia registration card to Bush. The transaction between Duncan and Bush occurred at 8:00 o'clock p.m. on 18 November, 1952.

4. These events took place the next day: (1) Bush displayed the Chrysler on his sales lot at Winston-Salem; (2) Bush executed to the defendant a chattel mortgage for $1,900.00 upon the Chrysler and another motor vehicle; and (3) the plaintiff delivered Bush's check to the First and Merchants National Bank at Radford, Virginia, for transmission through other banks to the Bank of Kernersville for payment. At the time of the execution of the chattel mortgage, Bush owed the defendant about $20,000.00. The defendant inspected the Chrysler at Bush's sales lot before taking the chattel mortgage from him, and Bush kept the vehicle there until the event specified in paragraph 9.

5. When Bush's check was presented to the Bank of Kernersville for payment, it proved to be worthless.

6. The plaintiff was informed of the worthlessness of Bush's check by the First and Merchants National Bank on 24 November, 1952. On that day and each of the four ensuing days, the plaintiff called Bush by long distance telephone, demanded of him that he make his check good at once, and received from Bush absolute assurances that he would make his check good without delay.

7. These assurances did not materialize. For this reason, the plaintiff called Bush again on 1 December, 1952, and held a colloquy with him by long distance telephone while he was allegedly in the office of the defendant. As the result of this colloquy, the plaintiff forwarded to the First National Bank of Winston-Salem through the First and Merchants National Bank a sight draft drawn on the defendant for the sale price of the Chrysler, to wit, $1,450.00. The Virginia certificate of title covering that vehicle was attached to the draft, and bore an assignment executed by the plaintiff purporting to transfer his title to that vehicle to Bush.

8. The First National Bank of Winston-Salem notified the defendant of its receipt of the sight draft, and held it for several days at the request of the defendant, which then refused to pay it. The First National Bank of Winston-Salem thereupon returned the sight draft and the attached certificate of title to the First and Merchants National Bank, which advised the plaintiff of the nonpayment of the draft on 9 December, 1952.

9. Meantime on some undesignated day between 1 December and 9 December, 1952, Bush vanished, and the defendant took into its possession the Chrysler and certain other motor vehicles which Bush had allegedly mortgaged to it. The defendant has retained the Chrysler ever since.

10.  Upon being advised of the nonpayment of the sight draft, the plaintiff undertook to contact Bush by long distance telephone, and thereby ascertained that he had disappeared.  On the next day, 10 December, 1952, the plaintiff visited the office of the defendant at Winston-Salem, and made inquiries of the defendant concerning the whereabouts of Bush and the Chrysler.

On the day after his visit to the office of the defendant, the plaintiff brought this action against the defendant for the recovery of the Chrysler. He sued out ancillary claim and delivery process in the action, but the defendant retained the automobile under an undertaking for replevy. The pleadings of the parties, which consisted of a complaint, an answer, and a reply, placed in issue the title to the Chrysler, and the right to its possession.  They also put in issue the allegations of the answer pleading waiver and estoppel on the part of the plaintiff.

When the action was tried before Judge Godwin and a jury at the June Term, 1953, of the Superior Court of Forsyth County, both sides offered evidence consistent with the matters recited in numbered paragraphs 1 through 10.

The plaintiff added testimony indicating that when he visited its office on 10 December, 1952, the defendant denied having the Chrysler in its possession; that he did not learn of the supposed chattel mortgage until after that time; and that the Chrysler was worth at least $1,450.00 at the time of its retention by the defendant under the undertaking for replevy.

The defendant presented additional evidence tending to show that it believed in good faith that Bush was the absolute owner of the Chrysler because he had the car, its keys, and the Virginia registration card in his possession; that it was induced by this belief to loan $1,900.00 to Bush upon the chattel mortgage covering the Chrysler and another motor vehicle; that Bush applied $1,350.00 out of the proceeds of the loan upon his pre-existing debts to the defendant, and devoted the remaining $550.00 to purposes not known to it; that $1,300.00 remains unpaid on the loan secured by the chattel mortgage upon the Chrysler and the other motor vehicle; that the defendant had no contemporary or subsequent knowledge of the supposed colloquy of 1 December, 1952, between the plaintiff and Bush by long distance telephone while Bush was allegedly in its office; that the defendant did not authorize Bush or the plaintiff or any other person to cause the sight draft to be drawn upon it, and had no knowledge of its existence until it received notice of the fact from the First National Bank of Winston-Salem; that the defendant requested the bank to hold the sight draft until it could ascertain whether any of its officers had authorized its drawing; and that the defendant instructed the bank to return the sight draft unpaid just as soon as it completed its inquiry and learned that none of its officers had sanctioned its drawing.

The issues submitted to the jury, and the responses of the jury thereto, were as follows:

1. Is the plaintiff the owner and entitled to the immediate possession of the Chrysler automobile, as alleged in the complaint? Answer: Yes.

2. Is the plaintiff estopped to claim ownership of said Chrysler automobile as against the Commercial Finance Company, as alleged in the answer? Answer: No.

3. What was the fair market value of said automobile on 11 December, 1952? Answer: $1,450.00.

The trial judge thereupon adjudged that the plaintiff should recover the Chrysler, if delivery could be had, and that the plaintiff should recover the value of the Chrysler, *i.e.*, $1,450.00, from the defendant and the surety on its undertaking for replevy, with appropriate interest, if delivery could not be had. The defendant excepted to this judgment and appealed, assigning errors.

*John D. Slawter and Womble, Carlyle, Martin & Sandridge for plaintiff Eugene H. Wilson, appellee.*

*William S. Mitchell for defendant Commercial Finance Company, appellant.*

ERVIN, J. The defendant insists initially that it is entitled to a reversal of the judgment because all of the testimony disproves the plaintiff's claim. The defendant advances these four independent and successive arguments to sustain this position:

1. The entire evidence compels the single conclusion that the plaintiff, acting through his agent, accepted Bush's check as absolute payment of the purchase price of the Chrysler, and that in consequence the ownership as well as the possession of the automobile passed to Bush at the time of its delivery to him.

2. The entire evidence compels the single conclusion that the plaintiff waived the immediate cash payment of the purchase price of the Chrysler by his conduct after learning of the dishonor of Bush's check, and in that way permitted the title to the automobile to pass to Bush, even if the contract between the plaintiff's agent and Bush did contemplate a cash sale of the Chrysler, and even if the plaintiff's agent did originally take Bush's check as a mere conditional payment of its purchase price.

3. The entire evidence compels the single conclusion that the defendant took its chattel mortgage on the Chrysler from Bush in good faith, for value, and without notice of the plaintiff's claim, and that in consequence it is entitled to be treated as a *bona fide* purchaser and as such protected against the claim.

4. The entire evidence compels the single conclusion that the plaintiff entrusted the possession of his Chrysler to Bush; that the plaintiff also invested Bush with an *indicium* of title to the Chrysler, namely, its registration card; that the defendant took its chattel mortgage on the Chrysler from Bush for value in reliance on Bush's possession of the Chrysler and its registration card; and that in consequence the plaintiff is estopped to claim ownership of the Chrysler as against the defendant.

In passing on this phase of the appeal, we must read the testimony in the light of the relevant rules of law. These rules are stated in the numbered paragraphs which immediately follow.

1. A cash sale is one in which the title to the property and the purchase price pass simultaneously, and the title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Little v. Fleishman,* 177 N.C. 21, 98 S.E. 455; *Davidson v. Furniture Co.,* 176 N.C. 569, 97 S.E. 480; *Hughes v. Knott,* 138 N.C. 105, 50 S.E. 586; Williston on Contracts (Rev. Ed.), Sections 730-733; 77 C.J.S., Sales, section 262. See, also, in this connection: *Grandy v. Small,* 48 N.C. 8; *Grandy v. McCleese,* 47 N.C. 142.

2. The seller may waive his contractual right to the immediate cash payment of the purchase price in a sale for cash and permit the title to pass to the buyer before the payment of the purchase price is made by language or conduct manifesting an intention on his part to abandon or relinquish his contractual right rather than to insist upon it. 46 Am. Jur., Sales, Section 446; 77 C.J.S., Sales, Sections 232, 262; 67 C.J., Waiver, Section 6. See, also, in this connection: *Manufacturing Co. v. Lefkowitz,* 204 N.C. 449, 168 S.E. 517; *Murphy v. Insurance Co.,* 167 N.C. 334, 83 S.E. 461. But he does not waive his contractual right by taking a check, which subsequently proves to be worthless, in payment for the property sold for cash. *Johnson v. Iankovetz,* 57 Or. 24, 110 P. 398, 29 L.R.A. (N.S.) 709.

3. In the absence of an agreement to the contrary, the delivery and acceptance of a check does not constitute payment of the item covered by it until the check itself is paid by the bank on which it is drawn. *South v. Sisk,* 205 N.C. 655, 172 S.E. 193; *Lumber Co. v. Hayworth,* 205 N.C. 585, 172 S.E. 194; *Raines v. Grantham,* 205 N.C. 340, 171 S.E. 360; *Moore v. Construction Co.,* 196 N.C. 142, 144 S.E. 692; *Dewey v. Margolis & Brooks,* 195 N.C. 307, 142 S.E. 22; *Hayworth v. Insurance Co.,* 190 N.C. 757, 130 S.E. 612; *Ins. Co. v. Durham County,* 190 N.C. 58, 128 S.E. 469; *Graham v. Warehouse,* 189 N.C. 533, 127 S.E. 540; *Bank v. Barrow,* 189 N.C. 303, 127 S.E. 3; *Thomas v. Prudential Ins. Co. of America,* 104 F. 2d 480. It necessarily follows that where the seller contracts to sell a chattel to the buyer for cash, and the seller accepts a check

from the buyer as a means of payment of the cash and delivers the chattel to the buyer in the belief that the check is good and will be paid on presentation, no title whatever passes from the seller to the buyer until the check is paid; and the seller may reclaim the chattel from the buyer in case the check is not paid on due presentation. *Weddington v. Boshamer,* 237 N.C. 556, 75 S.E. 2d 530; *Parker v. Trust Co.,* 229 N.C. 527, 50 S.E. 2d 304; 28 N.C.L. Rev. 132-137.

4. Even a *bona fide* purchaser of a chattel acquires no property right in it at common law or in equity as against the true owner, if it is sold by a third person who, although in possession, has no title to it, unless the true owner authorizes or ratifies the sale, or is precluded by his own conduct from denying the third party's authority to make it. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884; *Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312; *Land Co. v. Bostic,* 168 N.C. 99, 83 S.E. 747; *Lance v. Butler,* 135 N.C. 419, 47 S.E. 488; *Millhiser v. Erdman,* 98 N.C. 292, 3 S.E. 521; *Belcher v. Grimsley,* 88 N.C. 88; 56 Am. Jur., Sales, Section 464; 77 C.J.S., Sales, Section 295.

5. "In determining what protection is afforded to a *bona fide* purchaser of goods obtained by fraud, the nature and effect of the fraud practiced, rather than the mere presence or existence of fraud is controlling." 77 C.J.S., Sales, Section 294. This is true because in the absence of an estoppel, one is not entitled to protection as a *bona fide* purchaser unless he holds the legal title to the property in dispute. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Williams v. Lewis,* 158 N.C. 571, 74 S.E. 17; *Durant v. Crowell,* 97 N.C. 367, 2 S.E. 541; *Wharton v. Moore,* 84 N.C. 479; *Winborn v. Gorrell,* 38 N.C. 117, 40 Am. D. 456; *Polk v. Gallant,* 22 N.C. 395, 34 Am. D. 410; *Jones v. Zollicoffer,* 4 N.C. 645, 7 Am. D. 708; 46 Am. Jur., Sales, Section 464; 77 C.J.S., Sales, Section 288. As a consequence, an owner who is induced by the fraud of the buyer to part with the possession of his chattel, and no more, can reclaim it from a *bona fide* purchaser from or under the fraudulent buyer, unless the *bona fide* purchaser can bring himself within the protection of some principle of estoppel. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Ellison v. Hunsinger, supra; Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312; 42 Am. Jur., Sales, Section 470; 77 C.J.S., Sales, Section 294. But an owner who is induced by the fraud of the buyer to part with the legal title to his chattel cannot recover it from a *bona fide* purchaser from or under the fraudulent buyer. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Thomas E. Hogan, Inc., v. Berman,* 310 Mass. 259, 37 N.E. 2d 742; Williston on Contracts (Rev. Ed.), Section 1531; 46 Am. Jur., Sales, Section 471; 77 C.J.S., Sales, Section 294; Restatement of the Law of Restitution, Section 13. See, also, in this connection this decision:

*Railroad v. Barnes,* 104 N.C. 25, 10 S.E. 83, 5 L.R.A. 611. A mortgagee may occupy the status of a *bona fide* purchaser within the purview of these rules. "Accordingly, it is well established that, where a sale of personal property is induced by fraud, and the fraudulent purchaser mortgages the property to one who takes without notice of the fraud, and for a present consideration, the mortgagee occupies the position of a *bona fide* purchaser, and will be protected against the claim of the defrauded seller to the extent of the mortgage debt . . . Where, however, title to the property did not pass to the mortgagor, the mortgagee does not occupy the position of a *bona fide* purchaser and will not be protected against the claim of the rightful owner, at least where the owner has not clothed the mortgagor with the *indicia* of ownership to the extent of estopping him as against a mortgagee of the one in possession." 14 C.J.S., Chattel Mortgages, Section 307.

6. A conflict of authority exists in the several jurisdictions whose courts have had occasion to make direct pronouncement on the subject as to whether the seller can reclaim a chattel from a *bona fide* purchaser from or under the buyer where the seller delivers the chattel to the buyer under an agreement for a cash sale and takes from the buyer for the cash payment a check which afterwards proves to be worthless. "The first line of authority declares that, nothing else appearing, where a chattel is sold for cash, and a check is tendered as the cash payment, and the seller delivers the chattel to the buyer, no title whatever passes from the seller to the buyer until the check is paid or honored; and that in the absence of some estoppel on his part, the seller can reclaim the chattel from a *bona fide* purchaser from or under the buyer, or from a subsequent purchaser from or under such *bona fide* purchaser, in case the check is not paid or honored on due presentation . . . The second line of authority holds that, nothing else appearing, where the parties bargain for the cash sale of a chattel which the seller delivers to the buyer, and payment of the purchase price is made by a check which afterwards proves to be worthless, a voidable legal title passes from the seller to the buyer; and that in consequence a *bona fide* purchaser acquires an indefeasible title to the chattel if he purchases it from or under the buyer before his voidable title is avoided by the seller." *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391.

7. Pursuant to the rules which prevail in the legal field known as the conflict of laws, this Court has applied the first line of authority to transactions occurring in Pennsylvania, South Carolina, and the District of Columbia. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Ellison v. Hunsinger, supra; Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312. It has apparently had no occasion, however, to make a ruling in a worthless check case arising in North Carolina in which the seller undertook to

reclaim a chattel from a *bona fide* purchaser from or under the buyer. 28 N.C.L. Rev. 135. But this Court has adhered without variableness or shadow of turning to the rule that on a cash sale of personal property the legal title remains in the seller until the purchase price is paid, even though the seller accepts a check from the buyer as a means of payment of the cash and delivers the property to the buyer. This being true, North Carolina necessarily belongs among the jurisdictions where the first line of authority obtains.

8. The possession of a chattel is not of itself an *indicium* of authority on the part of its possessor to sell or encumber it. Consequently the true owner of a chattel is not estopped to deny the authority of its possessor to sell or encumber it merely because he entrusted its possessor with its possession. But where the true owner entrusts the possession of his chattel to another and at the same time invests such other with the *indicia* of title to it, he is estopped to claim ownership of the chattel as against an innocent purchaser or encumbrancer who pays value or loans money to the possessor in reliance on the *indicia* of title. *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669; *Motor Co. v. Wood*, 237 N.C. 318, 75 S.E. 2d 312; *Ellison v. Hunsinger, supra; Bank v. Winder*, 198 N.C. 18, 150 S.E. 489; 46 Am. Jur., Sales, Sections 460, 463; 77 C.J.S., Sales, Section 295.

When the evidence is interpreted favorably to plaintiff in the light of these rules, it makes out this case:

The plaintiff contracted to sell his Chrysler automobile to Bush for cash. Thus the payment of the purchase price in cash and the passing of the title were concurrent conditions. When he accepted the check from Bush as a means of payment of the purchase price in cash, and delivered his Chrysler automobile to Bush, the plaintiff parted with the possession of his Chrysler car, and no more. As the check proved to be worthless on its due presentation to the drawee bank for payment, no title, either valid or voidable, passed from the plaintiff to Bush under the terms of their contract. The plaintiff did not waive his contractual right to the cash payment of the purchase price by his conduct after learning of the dishonor of the check. All he did was to insist that Bush comply with his contractual obligation and make immediate payment. Since no title, either valid or voidable, passed from the plaintiff to him, Bush did not confer upon the defendant by his chattel mortgage any right whatever as against the plaintiff, even if the defendant's assumption that it took the mortgage in good faith, for value, and without notice be valid. Although he entrusted the possession of the Chrysler automobile to Bush, the plaintiff did not invest Bush with any *indicium* of title to it. This is true because the plaintiff retained his Virginia certificate of title, and under the law of Virginia the sole evidence of the ownership of a motor

vehicle is the registered title as exemplified· in the certificate of title. Virginia Code 1950, Sections 46-49 to 46-87; *Staunton Industrial Loan Corp. v. Wilson,* 190 F. 2d 706; *Sauls v. Thomas Andrews & Co.,* 163 Va. 407, 175 S.E. 760; *Thomas v. Mullins,* 153 Va. 383, 149 S.E. 494; *Holt Motors v. Casto* (W. Va. 1951), 67 S.E. 2d 432. The doctrine of estoppel would avail the defendant nothing on the present record even if we should ignore the law of Virginia and accept as valid the defendant's thesis that the plaintiff's registration card constituted an *indicium* of title to the Chrysler car. Since the notice of transfer form on the reverse side of the card was blank and unsigned, the registration card indicated that the plaintiff and not Bush owned the vehicle.

In leaving·this phase of the appeal, we note that the burden of proof on the issue of estoppel rested on the defendant, and that the plaintiff did not introduce any evidence tending to show that the defendant took the chattel mortgage on the faith of Bush's possession of the plaintiff's registration card. *Aldridge Motors, Inc., v. Alexander,* 217 N.C. 750, 9 S.E. 2d 469. The jury rejected the defendant's evidence to that effect.

The defendant contends secondarily that it is entitled to a new trial because the trial judge erred in admitting evidence offered by the plaintiff; in permitting counsel for the plaintiff to argue to the jury that the defendant attempted to practice a fraud upon the plaintiff; and in stating one of the plaintiff's contentions to the jury.

The defendant noted two objections to the admission of the plaintiff's evidence that he held a colloquy with Bush by long distance telephone while Bush was at the office of the defendant. The defendant waived these objections, however, by allowing the plaintiff to give substantially the same testimony without objection in other portions of his examination. *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326; *Powell v. Daniel,* 236 N.C. 489, 73 S.E. 2d 143; *Lipe v. Bank,* 236 N.C. 328, 72 S.E. 2d 759; *Spivey v. Newman,* 232 N.C. 281, 59 S.E. 2d 844. We are unable to see how the defendant can justly complain of the receipt of the plaintiff's evidence that his Virginia certificate of title was "the title" to his car. The plaintiff was merely identifying the document preparatory to its introduction in evidence. He was not testifying to its contents or legal effect. 32 C.J.S., Evidence, Section 625. The trial judge did not err in permitting the plaintiff to testify to facts tending to show that at Bush's instance he caused a sight draft to be drawn on the defendant for the amount of the purchase price of the Chrysler automobile, and to be forwarded to a Winston-Salem bank for collection with the Virginia certificate of title bearing his assignment to Bush attached. The trial judge did not err, moreover, in admitting the sight draft in evidence. This testimony had a logical tendency to reveal the state of mind of the plaintiff after he learned of the nonpayment of Bush's check, and to refute the

allegation of the defendant that he intentionally abandoned or relinquished his contractual right to the payment of the purchase price as a condition concurrent with the passing of title. *Woodard v. Mordecai,* 234 N.C. 463, 67 S.E. 2d 639; *S. v. Black,* 230 N.C. 448, 53 S.E. 2d 443; *S. v. Mull,* 196 N.C. 351, 145 S.E. 677. Since there was evidence at the trial tending to show that Bush was largely indebted to the defendant at the time Bush received the possession of the Chrysler car, that the defendant took a chattel mortgage from Bush on the Chrysler car immediately after its receipt by Bush, that the defendant compelled Bush to apply the major portion of the sum allegedly secured by the chattel mortgage on the Chrysler car to his pre-existing indebtedness to it, and that the defendant falsely denied its possession of the Chrysler car when the plaintiff sought information as to its whereabouts preparatory to reclaiming it after the disappearance of Bush, we are constrained to hold that counsel for the plaintiff did not exceed the bounds of propriety in arguing to the jury that the defendant attempted to practice a fraud upon the plaintiff. 64 C.J., Trial, Section 268. The trial judge did not err in his statement of the contention of the plaintiff. The contention had legitimate support in testimony. Moreover, the exception to its statement was noted for the first time in the case on appeal. *Powell v. Daniel, supra; S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608.

Since no error in matter of law or legal inference appears, the judgment will be sustained.

No error.